IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

RONALD AUSTIN MOSELEY, 132340     :
                                        :

   Plaintiff,                         :
                                        :

      v.                          : Civil Action No. 2:06-CV-539-WHT
                                        :

ARTHUR HORTON, et al.,              :
                                        :

   Defendants.                     :

## AFFIDAVIT

Before me, the undersigned authority, a Notary Public in and for the State of Alabama at Large, personally appeared Willie J. Thomas, who being known to me and being by me first duly sworn, deposes and says:

My name is Willie J. Thomas. I am currently employed with the Alabama Department of Corrections as a Warden III at Elmore Correctional Facility in Elmore, Alabama. I am over twenty-one (21) years of age.

I certify the documents attached to this affidavit to be true and correct copies of documents on file at Elmore Correctional Facility:  Department of Corrections Incident Report No. ECC 06-668, two Alabama Department of Corrections Disciplinaries for violation of Rule #56, two Alabama Department of Corrections Disciplinaries for violation of Rule #57, Alabama Department of Corrections Progress Review Form, and Alabama Department of Corrections Investigative Report on Case No. ECC 06-668.

_____
WILLIE J. THOMAS



1

STATE OF ALABAMA:

COUNTY OF ELMORE:

Sworn to and subscribed before me and given under my hand and official seal on this the 12th day of July, 2006.

_Diane G. Sutherland_
NOTARY PUBLIC

My Commission expires February 3, 2007

STATE OF ALABAMA
DEPARTMENT OF CORRECTIONS

# INCIDENT REPORT

| 1. Institution:<br>Elmore Correctional Center | 2. Date:<br>05-05-06 | 3. Time:<br>9:30p.m. | 4. Incident Number:<br>ECC 06-668 | Class Code:<br>B |
|---|---|---|---|---|
| 5. Location Where Incident Occurred:<br>B2 Dorm Cubical | | 6. Type of Incident:<br>#29, #56, #57 and Use of Force | | |
| 7. Time Incident Reported:<br>9:50p.m. | | 8. Who Received Report<br>Sgt. Arthur Horton | | |

| 9. Victims: | Name | | AIS |
|---|---|---|---|
| a. | **N/A** | No. | |
| b. | | No. | |
| c. | | No. | |

| 10. Suspects: | Name | | AIS | 11. Witnesses: | Name | | AIS |
|---|---|---|---|---|---|---|---|
| a. | **Thomas, James** | No. | **W/237650** | a. | **Gaither, Carl** | No. | **W/239422** |
| b. | **Crowe, Anthony** | No. | **W/244898** | b. | **Caraway, Bill** | No. | **W/157217** |
| c. | **Moseley, Ronald** | No. | **W/132340** | c. | **Salter, Roger** | No. | **W/240315** |
| d. | | No. | | d. | | No. | |
| e. | | No. | | e. | | No. | |
| | | | | f. | | No. | |
| | | | | g. | | No. | |

PHYSICAL EVIDENCE:
12. Type of Evidence

**Three (3) pills**

13. Description of Evidence:

**One (1) round white pill, one (1) blue oval shaped capsule, one (1) of the pills was crushed**

14. Chain of Evidence:

a. **From Inmate Thomas to COI Woods**
b. **COI Woods to a trash can in the cubical**
c. **Trash can to COI West who carried it to the Shift Office**
d. **From the trash can in the Shift Office to COI Woods**
e. **The pills were placed in an envelope then put in the Second Shift Drawer by Sgt. Horton**

15. Narrative Summary:

On 05-05-06 at approximately 9:30p.m. in B-Dorm, Officer Frederick Woods was talking with Inmate James Thomas W/237650 concerning the pills that were found in Inmate Thomas' locker box during a routine box shakedown. Officer Woods asked Inmate Thomas, "Where did you get the pills from?" Inmate Thomas stated he got the pills from Inmate John Vickers B/208238. Inmate Thomas stated that Inmate Vickers asked him if he wanted the pills and he (Inmate Thomas) responded "Yes". Officer Woods instructed Inmate Thomas to go get Inmate Vickers. Inmate Thomas returned to Officer Woods and stated, "I can't find him." Inmate Thomas began to change his statement as to whom gave him the pills. Officer Woods stated to Inmate Thomas, "You are trying to play me, but I'm going to do a favor and not write you a disciplinary this time." Officer Woods took the one (1) blue capsule and three (3) round oval shaped pills, placed them in toilet paper, poured water over the pills in the toilet paper, trying to destroy them. Officer Woods instructed Inmate Thomas to clean up the water and Inmate Thomas complied without incident.        (Cont'd on Page 2)

Distribution:    ORIGINAL AND ONE (1) COPY to Central I & I Division          COPY to Deputy Commissioner of Operations (Class A and B ONLY)
                 COPY to Institutional File                                   COPY to Central Records Office

*Moseley v. Horton*
00001

STATE OF ALABAMA
DEPARTMENT OF CORRECTIONS

# INCIDENT REPORT/DUTY OFFICER REPORT
## CONTINUATION

| Institution:<br>**Elmore Correctional Center** | Incident Number:<br>**ECC 06-668** | Class Code:<br>**B** |
|---|---|---|
| Date:<br>**05-05-06** | Type of Incident:<br>**#29, #56, #57 and Use of Force** | |

Narrative Summary (Continued) Page No.

Officer Woods then noticed that Inmate Anthony Crowe W/244898 was pointing Inmate Crowe's finger at Officer Woods, along with several other inmates. Officer Woods instructed Inmate Crowe to report to the Cubical. Officer Woods asked Inmate Crowe why was Inmate Crowe pointing his finger at Officer Woods. Inmate Crowe stated, "There is something wrong with that inmate you were talking to." Officer Woods told Inmate Crowe to mind his own business. Officer Woods asked Inmate Crowe if Inmate Crowe was trying to set up Inmate Thomas. Officer Woods then stated, "Is this some Southern Brotherhood Group mad because of the pills being found?" At that time, Inmate Crowe became very belligerent with Officer Woods and stated "Mother fucker, that inmate is crazy, fuck with me" and tried to push Officer Woods. Officer Woods pushed Inmate Crowe away from him (Officer Woods) as Inmate Crowe threw a punch at Officer Woods. Officer Woods grabbed Inmate Crowe and pulled him down to the floor. Officer Woods' radio fell to the floor and the battery came off. Officer Woods continued to hold down Inmate Crowe until Inmate Crowe stopped trying to fight. Officer Woods instructed Inmate Crowe to calm down and relax. Officer Woods asked Inmate Crowe to calm down, while holding Inmate Crowe by his right leg and placing Officer Woods' body over Inmate Crowe, while Inmate Crowe remained on the floor. Inmate Crowe stated to Officer Woods that he (Inmate Crowe) is calm. Officer Woods stated, "I'm going to let you up, okay?" Inmate Crowe stated, "Yes sir." Officer Woods let Inmate Crowe up and placed handcuffs on Inmate Crowe. Officer Woods instructed Inmate Crowe to sit down in a chair and Inmate Crowe complied without incident. Officer Woods talked with Inmate Crowe about his actions. At that time, Officer Woods felt Inmate Crowe was calm and relaxed, so Officer Woods removed the handcuffs. At that time, without incident, Officer Woods began to escort Inmate Crowe to the Shift Office. As Officer Woods escorted Inmate Crowe out of B-Dorm, several other inmates followed Officer Woods and Inmate Crowe out of the dorm. Officer Woods called for assistance from the Shift Office. Sgt. Arthur Horton and Sgt. Felisha Blanding, along with several other officers from Second Shift and Third Shift, responded to B-Dorm. All inmates were instructed to return to B-Dorm, and they did without incident. After reporting to the Shift Office, an investigation began into the matter. The trash can from B-Dorm was retrieved and placed in the Shift Office, where Officer Woods removed the pills from the trash. Officer Woods placed the pills in a brown envelope and gave the envelope to Sgt. Horton. Recommendations for disciplinary action will be forthcoming after investigation is concluded.

*Frederick Woods, COI*

Frederick Woods, COI

Moseley v. Horton
00002

ADOC Form 302-B – June 1, 2005

STATE OF ALABAMA
DEPARTMENT OF CORRECTIONS

# INCIDENT REPORT/DUTY OFFICER REPORT
## CONTINUATION

| Institution: **Elmore Correctional Center** | Incident Number: **ECC 06-** | Class Code: **B** |
|---|---|---|

Date: **05/05/05**

Type of Incident: #29, #56, #57 and Use of Force

Narrative Summary (Continued) Page No.

## ADDENDUM :

May 5, 2006, at approximately 9:50 p.m., COI Michael Smith called via radio and stated officers are needed on the yard. When Sergeant Arthur Horton and Sergeant Felisha Blanding responded in front of B2 dorm, approximately 20 inmates had exited the dorm. The inmates were instructed to go back into the dorm and get on their racks. Once inside the dorm more inmates were complaining and trying to speak with a supervisor. The responding officers continued ordering the inmates to get on their racks. Sgt. Horton ordered inmate Ronald Moseley, W/132340 to go to inmate Moseley's rack and inmate Moseley responded by stating, "I wish that mother fucker would put his hands on me," "Fuck Nigger" while pointing inmate Moseley's cane at COI Woods. Sgt. Horton took inmate Mosley by the right arm to escort inmate Moseley out of the dorm. Inmate Moseley pulled away from Sgt. Horton. At that point COI Wesley Mitchell tried to get control of inmate Moseley by grabbing inmate Moseley's arms, inmate Moseley started struggling and COI Mitchell and inmate Moseley fell to the floor. With the assistance of other officers inmate Moseley was escorted out of B2 dorm and into the inmate waiting room in the administration building. COI Mitchell informed Sgt. Horton on two occasions that COI Mitchell did not require medical attention. Inmates Carl Gaither, W/239422, Caraway Bill, W/157217, and Roger Salter, W/240315, stated that they witnessed the incident between COI Woods and inmate Crowe, see attached statements. At approximately 10:55 p.m., Sgt. Horton notified Assistant Warden, Steve Watson. Sgt. Horton questioned inmate Crowe about the incident with COI Woods, see attached statement. At approximately 11:17 p.m., COI West transported inmate Crowe by state van to the Staton Health Care Unit where inmate Crowe was examined by Nurse J. Webb (see attached body chart). At approximately 11:47 p.m., COI West transported inmate Crowe back to Elmore CC. Sgt. Horton asked COI Woods about the incident, see attached 302. Sgt. Horton asked COI Woods why were the handcuffs taken off of inmate Crowe. COI Woods replied, "I didn't feel threatened by him anymore." At approximately 12:00 a.m., COI Woods reported to the Staton Health Care Unit where COI Woods was examined by Nurse A. Lowery (see attached body chart). A first report of injury was completed and faxed to Risk Management for a cut on the knuckle of COI Woods' left hand. Inmate Moseley will be issued a disciplinary for violation of rule #56 Failure to Obey a Direct Order and # 57 Insubordination. Inmate Crowe will be issued a disciplinary for violation of rule #29 Assualt On Persons Associated with the ALDOC. Per Warden Watson's instructions COI Woods is not to be posted in population pending investigation. Inmates Crowe and Moseley will remained housed in B2 dorm until further investigation. A statewide notification was forwarded to the following: Deputy Comm. of Operations Greg Lovelace, Institutional Coordinator Roy Hightower and a copy was faxed to Investigation and Intelligence Division. No further action taken.

Arthur Horton, COII

STATE OF ALABAMA
*DEPARTMENT OF CORRECTIONS*

## INCIDENT REPORT/ DUTY OFFICER REPORT
### CONTINUATION

| Institution:<br>**Elmore Correctional Center** | Incident Number:<br>**ECC 06 -** | Class Code: |
|---|---|---|

Narrative Summary (Continued) Page No. 2

Addendum

On May 5, 2006, Due to being hostile and insubordinate during an incident that occurred in B-1 Dormitory, inmate Ronald Moseley, W/132340, was escorted to the Shift Office.  Inmate Moseley was sitting in the Administrative Building inmate waiting room talking loud in a disrespectful tone.  At approximately 10:15 p.m., Sergeant Felisha Blanding instructed inmate Moseley to be quiet again after being instructed to be quiet twice by Officer Kendrick Boyd.  Inmate Moseley did not comply with the orders given and continued to be hostile and talk loud.  Inmate Moseley stated to Sergeant Blanding, "No, you shut up, you shut the fuck up." Sergeant Arthur Horton, Officers Patrick Lucas, Boyd and Richard Story restrained inmate Moseley by placing inmate Moseley on the floor and placing handcuffs and leg irons on inmate Moseley.  At approximately 10:28 p.m., Officers Markeith West and Frederick Thomas transported inmate Moseley to Staton Health Care Unit for a body chart. Inmate Moseley was examined and released by Nurse S. Millican.  At approximately 11:11 p.m., Officers West and Thomas returned to Elmore CC with inmate Moseley.  Inmate Moseley will received disciplinaries for rule violation #56, Failure to Obey a Direct Order and #57, Insubordination. Inmate Moseley remains in Elmore CC inmate population with no further action taken at this time.  See attached body chart.

**Felisha Blanding, COII**

ADOC Form 302-B – June 1, 2005

*Moseley v. Horton*
**00004**

**DUTY POST LOG**

| DATE | PRINTED NAME AND RANK SIGNATURE | SHIFT (1, 2, 3, Adm, Etc.) | DUTY POST ASSIGNMENT |
|------|---------------------------------|----------------------------|----------------------|
| ENTRY TIME | | | |

On 5/5/2006, at approximately 9:53 PM, Officer Richard E. Story entered the Elmore front gate area. Upon entering the front gate, Officer Story heard Officer Michael Smith radio for assistance on the yard. Officer Story placed his lunch box on the floor and stated to Faye Longtell, "Let me back out the gates." Officer Story ran past Officer Sam Ware near gate #2, while waiting on gate #3, to be opened Officer Bruce Lafogg approached Officer Story as he (Officer Lafogg) exited the Admin. Building. Officer Lafogg ~~for officer~~ ask Officer Story, "Where are you going?" Officer Story stated, "They need assistance on the yard!" Once the gate was opened Officer Story exited the gate, and proceeded to assist officers on the yard.

*Officer Richard E. Story*

Where did CO's Lafogg and Ware go after you passed them? ~~Ros~~ Due to assisting officers on the yard Officer Story was unaware as to the where abouts of Officer's Lafogg and Ware (RES)

DOC N054  Rev 6-20-89

Moseley v. Horton
00005

I Carl Gaither AIS# 239422 was standing at the cube window watching Officer Woods and Anthony Crowe talking. Anthony Crowe turned around to walk off and officer Woods grabbed the inmate, spun him around and punched him in the face. They then wrestled to the ground and the officer got on top of inmate Crowe, held him down and started punching him in the face. Inmate Crowe then surrendered and the officer (Woods) handcuffed him, then placed Crowe in a chair and removed his radio. I couldn't hear anything that was said, but myself and about fifteen other inmates saw exactly what happened.

Carl Gaither
# 239422

Moseley v. Horton
00006

9-5-06

I inmate Caraway Bill #157217 was standing up by the T.V. area in B-2 dorm when I saw the officer that was working B-2 bring a white Inmate too the cube, the officer was talking Beligerint to the inmate when the officer got the inmate in the cube the officer started Pointing his finger in the Inmates face, then he hit the inmate and slammed him too the floor, at that time a lot of Inmates startled beatting on the cube window and yelling for the officer to stop hitting the inmate, The officer stoped at that time and let the inmate out of the cube, The inmate went to get his shirt so that he could go to the shift office and report the incedent, the same officer an another officer seen him getting ready to go to the shift office they intercepted him and startled acting violent towards him again, a lot of inmates seen this altercation and tryed to come to the shift office to tell what they had seen, But the officer that startled the incedent started hollering an acting up in a Beligerint way again and then some more officers came up.

*Moseley v. Horton*
00007

I Roger Salter AIS# 240315 was standing at a friends rack talking to Anthony Crowe, Crowe was telling me about officer Woods pouring water on another inmate in the cube and then making the ~~i~~ inmate (which is mentally retarded) get a mop and clean it up. Officer Woods then approached us and told Crowe to come to the cube and looked at me and said 'if you have a beef with it ~~Ill~~ I'll be back for you'. I then walked off to avoid a confritation. I looked back and seen everybody crowding around the cube and I went to see what was going on. When I got there all I seen then was officer Woods on the floor hitting Crowe, then Crowe surrendered and he handcuffed Crowe and placed him in a chair. I then turned around and walked off, so I no longer seen anything else.

R. Salter

AIS# 240315

Moseley v. Horton
00008

The officer Woods called an inmate to the cube that is half way retarded. He made him take off his shirt, pull up his pants, and take off his socks over a pill. Then officer Woods poured water on the inmate, Jame Thomas, and made him go get a mop and clean it up. I was sitting on a rack talking to Roger Salter voicing my oppinion about the situation. And Salter asked me which officer it was and i pointed toward the cube. The officer a little later came to the rack i was sitting on and called me to the cube. Then he pointed pointed at Roger Salter and told him that if he had something to say about it that he would come get him next. Me and the officer went to the cube once we got into the cube officer Woods got in my face cussing me and ask me what my problem was. I told him that i thought it was wrong the way he did the inmate he poured water on. He told me that it was none of my business and i said that i knew it was none of my business but i thought it was wrong. He told me to do something about it and i told him that i wasn't gonna do anything. He then continued to cuss me elling me a "motherfucker" and a "bitch". I told him that he didn't ave to cuss me and he continued. I asked him to write me a isciplinary or let me out of the cube, he said that he wasn't gonna ite me a disciplinary. I asked him to let me get out of the cube en he cussed me somemore and then he pushed me into the floor t on top of me and said "Now what bitch what bitch" then he hit , i pushed him off of me and he pushed me into the floor and tinued to hit me. Finally he let me up and hand cuffed me me down in the chair in the middle of the cube. Took his io off and asked me how does it feel to not be able to do ything. By that time officer McDonald was in the cube. I told him e again that i didn't have a problem, he took the handcuffs off of and told me that i had to clean up the cube I went out of

I was searched by an officer and he found some prescription pills in my bag. He asked me where I got them. I told him I don't know. When calling me in the office he asked me

... and he told me because ... was going ... me. He told me to take my shirt off and turn around he ... me ... did so, then ... other ... around he took the ... shirt off and found it ... the ... on it then he said ... around and he ... said ... turn ... in parts and down ...

moped it up." after I moped
it up. I told him I moped
to. so I get in the shower
shower and washed my
shirt and when I get
out the shower I seen
that the guy was talking
to get into a girl
with the cop. Because I
believe he felt like I
shouldn't have moped up
the mop water. James Thomas 237658



# EMERGENCY

**ADMISSION DATE** 3/6/06   TIME ___ AM PM   ORIGINATING FACILITY Elmore   □ SIR □ PDL □ ESCAPEE □   ☐ SICK CALL ☐ EMERGENCY ☐ OUTPATIENT

**ALLERGIES** Demerol

**CONDITION ON ADMISSION** ☑ GOOD ☐ FAIR ☐ POOR ☐ SHOCK ☐ HEMORRHAGE ☐ COMA

**VITAL SIGNS: TEMP** 98   ORAL/RECTAL   **RESP.** 18   **PULSE** 94   **B/P** 138/89   RECHECK IF SYSTOLIC <100> 50

**NATURE OF INJURY OR ILLNESS**

*(illegible handwriting)*

| ABRASION /// | CONTUSION # | BURN xx/xx | FRACTURE Z/Z | LACERATION / ___ SUTURES |
|---|---|---|---|---|

PROFILE RIGHT OR LEFT

RIGHT OR LEFT

**PHYSICAL EXAMINATION**

*(illegible handwriting)*

| ORDERS / MEDICATIONS / IV FLUIDS | TIME | BY |
|---|---|---|

**DIAGNOSIS**

**INSTRUCTIONS TO PATIENT**

*Moseley v. Horton*
00012

**DISCHARGE DATE** 3/6/06   TIME ___ AM PM   RELEASE / TRANSFERRED TO ☐ DOC ☐ AMBULANCE ☐   CONDITION ON DISCHARGE ☐ SATISFACTORY ☐ POOR ☐ FAIR ☐ CRITICAL

**NURSE'S SIGNATURE** ___   **DATE** 3/6/06   **PHYSICIAN'S SIGNATURE** ___   **DATE** ___   **CONSULTATION**

**INMATE NAME (LAST, FIRST, MIDDLE)** Oliver, Fredrick Wood   **DOC#** ___   **DOB** ___   **R/S** B/M   **FAC.** Elmore

PHS-MD-70007   **(White – Record Copy, Yellow – Pharmacy Copy)**



**PHS**
PRISON
HEALTH
SERVICES
INCORPORATED

# EMERGENCY

| ADMISSION DATE 5/05/06 | TIME 1:35 ☑AM ☐PM | ORIGINATING FACILITY _Elmore_ ☐SIR ☐PDL ☐ESCAPEE ____ | ☐SICK CALL ☑EMERGENCY ☐OUTPATIENT |
|---|---|---|---|

| ALLERGIES None | CONDITION ON ADMISSION ☑GOOD ☐FAIR ☐POOR ☐SHOCK ☐HEMORRHAGE ☐COMA |
|---|---|

| VITAL SIGNS: TEMP 98.3 | ORAL RECTAL | RESP. 20 | PULSE 103 | B/P 140/70 | RECHECK IF SYSTOLIC <100>50 |
|---|---|---|---|---|---|

**NATURE OF INJURY OR ILLNESS**

S - Body Chart - I got into an altercation and got hit near my eye.

O - Rt. Brow (small laceration)

| | ABRASION /// | CONTUSION # | BURN xx xx | FRACTURE Z Z | LACERATION / ____ SUTURES |
|---|---|---|---|---|---|

PROFILE RIGHT OR LEFT

RIGHT OR LEFT

**PHYSICAL EXAMINATION**

O - Body Chart - Pearls present. Alert & Oriented x 3

P - Will de nurse

| ORDERS / MEDICATIONS / IV FLUIDS | TIME | BY |
|---|---|---|
| Motrin 600 mg PO | 1130 | |

**DIAGNOSIS**

**INSTRUCTIONS TO PATIENT**

Return to clinic. Sign up for sick call.

| DISCHARGE DATE 5/05/06 | TIME 1130 ☐AM ☐PM | RELEASE / TRANSFERRED TO ☑DOC ☐AMBULANCE | CONDITION ON DISCHARGE ☑SATISFACTORY ☐POOR ☐FAIR ☐CRITICAL |
|---|---|---|---|

*Moseley v. Horton*
**00013**

| NURSE'S SIGNATURE | DATE 5/5/06 | PHYSICIAN'S SIGNATURE | DATE | CONSULTATION |
|---|---|---|---|---|

| INMATE NAME (LAST, FIRST, MIDDLE) Crowe, Anthony | DOC# 2-14898 | DOB 11/13/86 | R/S | FAC. |
|---|---|---|---|---|

PHS-MD-70007    MedNEB    (White - Record Copy, Yellow - ...)



**PHS**
PRISON
HEALTH
SERVICES
INCORPORATED

# EMERGENCY

| ADMISSION DATE | TIME | | ORIGINATING FACILITY | | SICK CALL ☐ EMERGENCY ☐ |
|---|---|---|---|---|---|
| 5 /5 /06 | 2:3? | ☐ AM ☐ PM | ☐ SIR ☐ PDL ☐ ESCAPEE ☐ _____ | | ☐ OUTPATIENT |

| ALLERGIES | CONDITION ON ADMISSION |
|---|---|
| NKA | ☐ GOOD ☐ FAIR ☐ POOR ☐ SHOCK ☐ HEMORRHAGE ☐ COMA |

| VITAL SIGNS: TEMP 98° | ORAL RECTAL | RESP. 20 | PULSE 70 | B/P 120/88 | RECHECK IF SYSTOLIC <100> 50 / |
|---|---|---|---|---|---|

**NATURE OF INJURY OR ILLNESS**

S- Bodychart per DOC
request re: altercation

| | ABRASION /// | CONTUSION # | BURN xx xx | FRACTURE Z Z | LACERATION / _____ SUTURES |
|---|---|---|---|---|---|

PROFILE RIGHT OR LEFT

RIGHT OR LEFT

**PHYSICAL EXAMINATION**

O- A+O×3 & sees a physical
injury noted & complaints
today

A- Bodychart
P- RN's review - Return
to DOC ?c

| ORDERS / MEDICATIONS / IV FLUIDS | TIME | BY |
|---|---|---|
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |

**DIAGNOSIS**

**INSTRUCTIONS TO PATIENT**

*Moseley v. Horton*
*00014*

| DISCHARGE DATE | TIME | | RELEASE / TRANSFERRED TO | CONDITION ON DISCHARGE |
|---|---|---|---|---|
| 5 /5 /06 | 2:3? | ☐ AM ☐ PM | ☑ DOC ☐ AMBULANCE ☐ | ☑ SATISFACTORY ☐ POOR ☐ FAIR ☐ CRITICAL |

| NURSE'S SIGNATURE | DATE | PHYSICIAN'S SIGNATURE | DATE | CONSULTATION |
|---|---|---|---|---|
| A Williams | 5/5/06 | | | |

| INMATE NAME (LAST, FIRST, MIDDLE) | DOC# | DOB | R/S | FAC. |
|---|---|---|---|---|
| Mosley Ronald | 133340 | 5-1-13 | w/m | ECC |

PHS-MD-70007                    (White – Record Copy  Yellow – Pharmacy  Service)

On 5-5-06 at approximately 9:45 pm I, Jerome McDonald COI, return to the cube of B-dorm from the shift office. Upon entering the cube I observed Inmate Anthony Crowe W/244898 sitting in a chair next to the A.C. unit in handcuffs. I asked Officer Fredrick Woods was he alright? and what happened? Officer Woods replied "Yes I am fine." and then stated "this guy decided to take another inmates problems into his own hands and handle them for him." Officer Woods then asked me to watch the inmate while he stepped out for a minute. While Officer Woods was out I asked the Inmate Crowe what did he do? Inmate Crowe replied "Nothing." I then said to him that he could stop lying because he would not be in handcuffs if he had not done anything. Inmate Crowe replied "He hit me." I asked him who? He stated "The officer hit me." I then asked Inmate Crowe why did the officer hit him? Inmate Crowe replied, "I ran up on him." I, Officer McDonald, then asked Inmate Crowe had anyone ever told him not to run up on an officer? Inmate Crowe failed to reply and his eyes began to tear up.

Moseley v. Horton
00015

Officer Woods returned to the cube and asked Inmate Crowe if he was calm? he replied "Yes." Officer Woods asked, Inmate Crowe would he be alright if he removed the handcuffs? Inmate Crowe replied "Yes." Officer Woods removed the handcuffs from Inmate Crowe and ordered him to get a mop and a broom to clean up before going to the shift office. Inmate Crowe left the cube to retrieve a mop and broom, but was met by a group of twenty or twenty-five other Inmates who told him not to listen to Officer woods orders and to just get his state shirt and go to the shift office. Officer Woods notice that Inmate Crowe was not returning to the cube so he stepped out and called for him. Inmate Crowe turned around and yelled at Officer Woods and them continued to walk away. Officer Woods stepped back in the cube and asked ~~the~~ me to step out and assist him. Officer Woods and I walked out into population and cut Inmate Crowe off. I, Officer McDonald, asked Inmate Crowe what was he told to do by Officer Woods? he replied "I'm not cleaning shit up, I'm going to the fuckin shift office." I told him that he was going to do what Officer Woods had instructed him to do.

Officer Woods then said "No Mac if he wants to go to the shift office we are gonna go to the shift office." and then told Inmate Crowe to walk with him. Officer Woods walked out of the dorm ahead of the inmate as I followed behind to watch them up the sidewalk. While standing at the corner of the weight pile watching Officer Woods ~~escort~~ escort Inmate Crowe to the shift office I heard the dorm door open. When I turned around to see who it was I observed a group of about twenty inmates, led by Inmate Ronald Mosley W/132340, walking out of the dorm. I stopped them and asked them where were they going. ~~and~~ They all replied, To the shift office. I told them that they were not going and that they needed to turn around and go back into the dorm. At approximately 9:50 pm Officer Mike Smith observed the inmates rushing out of the dorm and called for assistance. Every Officer on both second and third shift except two showed up to bring the situation under control. Officers Ware and LaFogg were absent from the situation. Officer Richard Story said that he passed both Officer Ware and LaFogg headed to the front gate as he, Officer Story, ran back in to provide assistance. Officer Story said that Officers

Moseley v. Horton
00017

LaTragg and Ware asked why was he running? Officer Story said the he told them Both that an officer called for Assistance.

Jerome McDonald COI
Jerome McDonald COI

## CONTINUATION SHEET

B. La Fogg COI

**Institution:**
ELMore C.C.

**Incident Number:**

**Date:**
5-7-06

**Type of Incident:**
statement

**Narrative Summary (Continued) Page No.**

On 5-5-06 I B. La Fogg was working in 4 dorms along with officer Ware. We were relieved by officer Mitchell at or about 9:50 P.M.. We turned our keys and radios over to officer Mitchell. We then went to the shift office and signed out and then proceeded to the front gate picked up our state Id and left at 9:55 P.M. Everything appeared fine and nothing unusual was going on to my knowledge. I was never notified that anything was going on or that there was any type of incident or situation occuring.

B. La Fogg COI

ADOC Form 602 Revised 4-6-99

Annex A (Page 2 of 2)

Moseley v. Horton
00019

AR 302-April 6,1999

On 5-5-06 officer S. Ware was assigned to A-2 Dorm. At approximitly 9:50 Pm officer mitchel 3rd shift officer relieved officers S. Ware & LaFogg of all duties, Equipment & Keys, officer S. Ware went to shift officer to sign out at approxsdly 9:52 Pm officer S. Ware went up the hall way to front gate to pick up I.D. Card, then left front Gate at approxsitely 9:55 Pm. at no time did officer S. Ware here a radio call to B-Dorm or did eny one tell officer S. Ware there was trouble in B-Dorm.

officer S. Ware

Moseley v. Horton
00020

I saw Officer Woods take inmate Crone in the cubicle, they exchanged words and Crone tried to leave the cubicle and Officer Woods snatched inmate down on the floor and started hitting him with a closed hand. Inmate Crone got from under Officer Woods and was trying to get away but Officer Woods grabbed him again and slung inmate Crone against the cubicle walls and was trying to choke the inmate or something to that nature. Then he handcuffed the inmate and slung him in a chair in the cubicle, they were saying something back and forward to each other then Officer Woods took the handcuffs off and sent inmate Crone out the cubicle. Everyone was telling inmate Crone to go report it to the shift commander. When Officer Woods and McDonald seen that inmate Crone was going to the shift office they came out of the cubicle and tried to stop him, and that's when Officer McDonald told inmate Crone that if he don't get back in the cubicle that he would get some more of what he just got.

This is my statement as to what happened on 2nd shift in B-2 Dorm on this date. 05/05/06.

/s/ Respectfully Submitted

Michael A. Rhoden #175085

Michael A. Rhoden

Moseley v. Horton
00021

Page

Ronald Moseley
#132340

Sunday    5-7-06

ON 5-5-06 Friday Night I was sitting on Barry Wysenger Rack talking to him, when the officer approach the next Bunk over and told the young guy to go with him to the Cube, Barry & I look at eachother and said we know this is trouble, we got up and went to the Cube and the officer slam the door, and said something to the guy, and the guy said something and the officer rush him and started slinging him around, and then he (officer) slug the Inmate on the floor and straddle him and started beating him in the face, he then pull him up and handcuff him, and we (Inmates) said he was wrong he was going to have to be a Body Chart done. The officer then un handcuff him, and told him to Mop the floor.

I walk in the Bathroom and the Inmate came in behind me and I told him to get the officer to get him a Body chart.

Then we were standing around the dorm around the front Door trying to talk to the Supervisor Sgt. Horton, that the officer was wrong and I was standing there when officer Mitchell went in behind the other officers and jump on my back, I could tell he had been drinking, cause his breath would knock you down.

Then they took me to the Shift office, and I was setting in the waiting Room, and officer Mitchell came in and went in and talk to the Sgt. and then he came out and started to go out the door and he turn to me and said he was sorry about jumping on my back he came to work mad.

Moseley v. Horton
00022

Page 2

Sunday 5-7-06

Then I kept setting in the waiting Room, and another Inmate ask the Officer a question and he said for ths to shut Up, I said I haven't said anything, and he said didn't I tell you to shut Up, and We we fussing at each other, when Sgt Horton and them come into the waiting Room, and the Woman Sgt told Me to shut Up and I tell her to shut the Fuck Up that's when Sgt Horton Rush Me and hit Me with his Shoulder and the other Officers jump on Me wrestle Me to the Floor and started Kicking Me and stomping Me and they HardCuff & Shackle Me ton the Floor, and Let Me lay there with a bench turoven on My foot, and Officer Thomas got it off Me and him and another Officer help Me to My feet to set on a bench. Then they took Me to SHCU and I told Nurse Middleton it wasn't anything Wrong with Me, Cause I don't Want no trouble I go home in 3½ Months, I would like someone to talk to the Woman Sgt. to drop My 2 disciplinary; And for Me to Apollogise to the Sgt. for telling her to shit Fuck Up. I was wrong on that. Both Sgt's said Two Wrongs don't Make No Right. Was it Right? for Officer Mitchell to come to Work drinking? All of B-2 Dorm smell it and the things he did.

Sincerly,
Ronald Moseley
132340

I seen officer Woods take Mr. Crowe
in the cube, and I could see
officer Woods hollering and it
looked like they was arguing
Crowe turned and stated
try to leave the cube, then
officer Woods grabbed him by
the arm and spun him around
and hit him, and then he threw
him on the floor and hit
him some more. Crowe somehow
got out from under him, and
tried to get out of the cube
agian, that is when officer Woods
threw him up agianst the window
and then he had him on the
floor trying to choke him.
they finally got up and Woods
put the cuffs on him and
set him in the chaire
they talked for a mineute and
then he took the cuffs off
of him. When Crowe came out
everybody told him to go to
the shift office, so he put on
his shirt and started towards
the door, and that is when
officer Woods and Mc Donald
stoped him, and told him

STATE OF ALABAMA
DEPARTMENT OF CORRECTIONS

## INCIDENT REPORT/DUTY OFFICER REPORT
## CONTINUATION

| Institution: ELMORE CORRECTIONAL FACILITY | Incident Number: ECC 06- | Class Code: |
|---|---|---|

| Date: | Type of Incident: |
|---|---|

Narrative Summary (Continued) Page No.

W. MITCHE  5-5-06  AT 10:15PM

OFFICER W. MITCHELL ENTERED B2 SIDE OF B DORM AT THE REQUEST FOR ALL OFFICERS TO SECURE THE YARD. THE DORM (B2) SIDE WAS NOT RESPONDING TO OFFICERS ORDERS TO RETURN TO THEIR BUNKS. INMATE RONALD MOSLEY AIS# 13234 YELLED OBSENITIES AND RAN TOWARDS OFFICER MITCHELL WITH HIS RIGHT ARM RAISED. OFFICER MITCHELL SECURED INTMATE MOSLEY'S RIGHT ARM BEHIND INMATE MOSLEY'S BACK WHEN THE INMATES WEIGHT SHIFTED CAUSING BOTH OFFICER MITCHELL AND INMATE MOSLEY TO FALL TO THE FLOOR. THE INMATE WAS ASSISTED IN GETTING INMATE MOSLEY TO HIS FEET AND ESCORTED OUT OF THE DORMITORY. OFFICER MITCHELL STAYED IN THE DORM ASSISTING OTHER OFFICERS TO REGAIN CONTROL IN THE DORM BY PLACING ALL THE INMATES TO THEIR ASSIGNED BEDS. NO OTHER ACTION TAKEN

5-5-06
Wesly Mitchell
WESLEY MITCHELL

Moseley v. Horton
00025

ADOC Form 302-B – June 1, 2005

**EMPLOYER'S FIRST REPORT OF INJURY OR OCCUPATIONAL DISEASE**
**STATE EMPLOYEE INJURY COMPENSATION TRUST FUND**
**STATE OF ALABAMA**

— Report to be completed by supervisor or other designated authority.
— All questions must be answered.
— Additional instructions are on the back of this form.
— Type or Print

SEND TO: STATE EMPLOYEE INJURY COMP. TRUST FUND
DIVISION OF RISK MANAGEMENT
P.O. BOX 303250
MONTGOMERY, AL 36130-3250
1-800-388-3406   FAX: (334) 223-6170

This report must be completed and FAXed to the Division of Risk Management within 24 hours of the injury. If you are unable to FAX, the injury may be reported by calling 1-800-388-3406, 8 AM to 5 PM, Monday thru Friday. After hours injury reports should be FAXed or called in at the beginning of the next working day.

1. Name of Injured Employee (Please type or print)
(Last) Woods  (First) Frederick  (MI) A
2. SSN 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
3. Date of Birth 8 12 7166
4. Sex M

5. Home Address (No. and Street) 6612 Stategate CT  (City or Town) Montgomery  (State) AL  (Zip) 36116
6. Phone Home (334) 286-0904  Work (334) 567-1460

7. Job Title Correctional Officer I
8. Status ✔ Full Time / Part Time / Contract
9. Job Code

10. Employing Agency State of ALABAMA
11. Division, District, etc. Dept of Corrections

12. Agency Address (No. and Street) 3520 Marion Spillway Rd  (City or Town) Elmore, AL  (State)  (Zip) 36025

13. Date of Injury 5 15 06
14. Time of Injury 9:50 AM ✔PM
15. Date Employer Notified 5 15 06
16. Will employee be out of work more than three work days? Yes / No / Unknown

17. Is employee covered by State Employee Medical Insurance? ✔Yes / No
If Yes: ✔Blue Cross/Blue Shield / Humana / Complete Health / Health Partners / Southeast / Other:

18. Name and address of treating physician N/A
19. Name and address of hospital
___Hospitalized ___Outpatient ___Emergency Treatment

20. City or town where injury occurred Elmore, ALABAMA
21. Location or place where injury occurred Elmore Corr Center
22. Was injury caused by a motor vehicle accident? Yes / ✔No

23. Describe fully what happened to cause the injury or illness:
Alltercation with an inmate

24. Describe the injury or illness in detail and indicate the body part(s) affected:
Small cut on Left hand first finger

25. Were there any witnesses to the injury? ✔Yes / No (If Yes, give name, address and phone number)

26. Signature of supervisor (or other designated authority) Arthur Horton, COII
Print Name Arthur Horton
Phone (Daytime)
Date 5/05/06

AGY/ORG  DIV  LOC

How long employed with agency?
Current wkly wages _____

*Moseley v. Horton*
00026

SEICtF Form 1 (1/97)

# Message Confirmation Report

MAY-06-2006 03:05 AM SAT

Fax Number : 334 514 5328
Name      : SHIFT OFFICE

| | | |
|---|---|---|
| Name/Number | : | 2236170 |
| Page | : | 1 |
| Start Time | : | MAY-06-2006 03:04AM SAT |
| Elapsed Time | : | 00′ 46″ |
| Mode | : | STD G3 |
| Results | : | [ O.K ] |

---

**EMPLOYER'S FIRST REPORT OF INJURY OR OCCUPATIONAL DISEASE**
**STATE EMPLOYER INJURY COMPENSATION TRUST FUND**
**STATE OF ALABAMA**

- Report to be completed by supervisor or other designated authority.
- All questions must be answered.
- Additional instructions are on the back of this form.
- Type or Print

SEND TO: STATE EMPLOYEE INJURY COMP. TRUST FUND
DIVISION OF RISK MANAGEMENT
P.O. BOX 303250
MONTGOMERY, AL 36130-3250
1-800-388-3406    FAX: (334) 221-6170

This report must be completed and FAXed to the Division of Risk Management within 24 hours of the injury by calling 1-800-388-3406, 8 AM in 5 PM. Monday thru Friday. After hours injury reports should be FAXed or called in at the beginning of the next working day.

If you are unable to FAX, the injury may be reported by calling.

| 1. Name of Injured Employee (Please type or print) | | | | | | 2. SSN | 3. Date of Birth | 4. Sex |
|---|---|---|---|---|---|---|---|---|
| (Last) Daniels | (First) Fredrick | (MI) A | | | | 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  3 127166 | | ☒ M  ☐ F |
| 5. Home Address (No. and Street) 6612 Stablecato CT | (City or Town) Montgomery | (State) AL | (Zip) 36116 | | 6. Phone Home (334) 286-0904 | | | |
| 7. Job Title Correctional Officer I | | | | Work (334) 567-1460 | | | | |
| 10. Employing Agency State of ALABAMA | | | | 8. Status ☒ Full Time ☐ Part Time ☐ Contract | 9. Job Code | | | |
| 12. Agency Address (No. and Street) 3520 Marion Spillway Rd | (City or Town) Elmore, AL | | (State) 36025 | 11. Division, District etc. Dept. of Corrections | | (Zip) | | |
| 13. Date of Injury 5 15 06 | 14. Time of Injury 9:50 AM ☒ PM | | 15. Date Employer Notified 5 15 06 | 16. Will employee be out of work more than three work days? ☐ Yes ☐ No ☐ Unknown | | | | |
| 17. Is employee covered by State Employee Medical Insurance? ☒ Yes ☐ No If Yes: ☐ Blue Cross/Blue Shield ☐ Other: | | | ☐ Humana ☐ Complete Health | ☐ Health Partners | ☐ Southeast | | | |
| 18. Name and address of treating physician N/A | | | | 19. Name and address of hospital | | | | |
| 20. City or town where injury occurred Elmore, ALABAMA | | | | ☐ Hospitalized ☐ Outpatient ☐ Emergency Treatment | | | | |
| | | | | 21. Location or place where injury occurred Elmore Corr. Center | 22. Was injury caused by a motor vehicle accident? ☐ Yes ☒ No | | | |
| 23. Describe fully what happened to cause the injury or illness | | | | | | | | |
| Alltercation with an inmate | | | | | | | | |
| 24. Describe the injury or illness in detail and indicate the body parts affected: | | | | | | | | |
| Small cut on left hand first finger | | | | | | | | |
| 25. Were there any witnesses to the injury? ☐ Yes ☐ No (If Yes, give name, address and phone number) | | | | | | | | |
| 26. Signature of supervisor (or other designated authority) | Print Name Arthur Horton | | Phone (Daytime) | Date 5/05/06 | | | | |
| AGY/ORG | DIV | | LOC | | | | | |
| How long employed with agency? | | | | | | | | |
| Current wkly wages | | | | | | | | |

SEICTF Form 1 (1/97)

Moseley v. Horton
00027

# EVIDENCE FORM

INSTITUTION: _____ *Elmore Correctional Center* _____ CASE NUMBER: _____

DATE: _____ May 5, 2006 _____ TIME: _____ 9:30 PM

LOCATION FOUND: _____ B Dorm Cubicle from inmate James Thomas W/237650, then again from trash can carried from Cubicle to Shift Office.

VICTIM: _____ N/A

OFFENSE: _____ #64, Possession of Contraband

SUSPECT(S): Inmate James Thomas W/237650

TYPE OF EVIDENCE: _____ Pills

DESCRIPTION OF EVIDENCE: One (1) round white pill, one (1) blue oval shaped capsule

_____ One (1) of the pills was crushed.

CHAIN OF EVIDENCE: (Signature) *Frederick Woods*

DATE: 5/5/06    TIME: 5:55 pm

(Signature) *Cush F Norton, COII*

DATE: 5/5/06    TIME: 10:20 p.m

(Signature) Lt. Robert Rogers *Robert Rogers*

DATE: 5/8/06    TIME: 6:00 PM

(Signature) _____

DATE: _____ TIME: _____

(Signature) _____

DATE: _____ TIME: _____

INVESTIGATOR: _____ DATE: _____ TIME: _____

*ALL EVIDENCE MUST BE PROPERLY SEALED AND SIGNED FOR!*

*Per Warden Watsons request*

May 8, 2006

Warden Watson,

Per your request, I have reviewed the file of inmate James Thomas, AIS # 237650, DOB 2/17/1984:

Inmate is serving a 3 year sentence for YOA, Burglary III, minimum release date of 8/04/2006, long date of 2/18/2007.

Intake information:  BETA II Score: 77 (Borderline IQ)
WRAT-RL Score: +12 Reading Level
MH-0 Mental Health Code
Abuse of Marijuana and Cocaine, denied SAP needs.  Prior Substance abuse treatment at Salvation Army, Mobile, approximately October, 2005.
MMPI – States inmate is likely to be demanding, hostile, irritable. Feels insecure, isolated, rejected and unwanted.  In response to stress, inmate will either withdraw or act out his angry impulses. Inmate is likely to act impulsively and have suicidal ideations.

3/29/06 - Received at Elmore, assigned to Recycle 1.

Please let me know if you would like me to interview this inmate, or if you need any additional information.

Lynn Lewis, P.A. II

*Moseley v. Horton*
00029

# State of Alabama
## Alabama Department of Corrections

301 South Ripley Street
P. O. Box 301501
Montgomery, AL 36130

BOB RILEY
GOVERNOR

RICHARD F. ALLEN
COMMISSIONER

April 18, 2006

To:    Warden Thomas

Thru: Warden Watson

Thru: Captain Moore

Thru: Lt. Rogers

From: Officer Fredrick Woods

Re:    Overtime at Julia Tutwiler

*[handwritten notes:]* 4/28/06 cc: Lt. Rogers, Cpt. Woods, S. Acreman

approved W. Thomas

Recommend approved - leave balances and active disc action listed on strickly, note attached. Recommend calling Warden Albright to advise of such. Per employee, this was appld at Draper by Warden DeLoach prior to his transfer here at Elmore CF 3/20/06. Warden II Skat 4/27/06

OK RRog 4/22/06

Fredrick Woods 001

I respectfully request your permission to work overtime at Julia Tutwiler Prison for
Women.  Your consideration is greatly appreciated.

*[handwritten:]* This approval is hereby temporarily Suspended pending - I & I investigation, per Warden II Steve Watson Lt Rogers 5/8/06

All overtime is suspended pending conclusion of investigation. Lt Rogers

Acknowledge Receipt: X Fredrick Woods

cc:  Dr. Woods, Warden III + II, Capt

Telephone (334) 353-3883                    Fax (334) 353-3967

Moseley v. Horton
00030



### State of Alabama
# Alabama Department of Corrections

301 S. Ripley Street
P. O. Box 301501
Montgomery, AL 36130

Telephone (334) 353-3870                    Fax (334) 353-3967

**BOB RILEY**
GOVERNOR



**RICHARD ALLEN**
COMMISSIONER

Date    : May 6, 2006

To      : Lt. Robert Rogers

Thru    : Lt. Ricky Dennis

From    : Sergeant Felisha Blanding

Re      : May 5, 2006 incident on Second Shift

On May 5, 2006, an incident occurred on Second Shift involving Officer Fredrick Woods and some inmates assigned to B-2 Dormitory. At approximately 9:50p.m., Second Shift Officer Michael Smith radioed for officers assistance needed on the yard. It has been reported to me and brought too my attention by more than one officer that Second Officers Bruce Lafogg and Sam Ware departed the institution after the Officers needed call was announced over the radio. It is very important that each and every Officer respond promptly to an Officer that needs assistance, because they never know one day when the Officer that needs assistance could be them. Lt. Rogers will you please address this matter.

Thank you in advance for your assistance.

*Get statements from Ware,*
*Lafogg, Story,*
*McDonald.*

*Moseley v. Horton*
00031

**Watson, Steve**

| | |
|---|---|
| **From:** | Watson, Steve |
| **Sent:** | Monday, May 08, 2006 11:17 PM |
| **To:** | Yarbrough, Paul (Randy) |
| **Cc:** | Lovelace, Greg; Hightower, Roy; Thomas, Willie; Watson, Steve; Moore, Willie |
| **Subject:** | Request for investigation-Elmore Correctional Facility |

Dear Mr. Yarbrough,

Please see the attached request for investigation into a serious incident at Elmore CF.   Thank you very much.

Warden III Willie Thomas
Elmore CF



Investigation
quest to I & I



1

*Moseley v. Horton*
00032





# State of Alabama
## Alabama Department of Corrections

Elmore Correctional Center
Post Office Box 8
Elmore, Alabama 36025

**Bob Riley**
Governor

Richard F. Allen
Commissioner

May 8, 2006

From: Warden III Willie Thomas, Elmore Correctional Facility

To:      Randy Yarbrough, Director I & I Division

Ref:     Request for investigation


I am respectfully requesting your assistance in determining the facts related to an incident that occurred on May 5, 2006 at Elmore Correctional Facility in the B-2 dormitory. The incident involved Correctional Officer Frederick Woods. It is alleged that COI Woods confiscated several pills from inmate James Thomas' (W/ 237650) locked locker box, attempted to get the inmate to tell him who he got the pills from, and when that didn't happen, demeaned and abused the inmate by pouring water on his property and down the back of the inmate while in the dormitory cubicle. COI Woods then poured water on the pills, and discarded them in the trash can of the cubicle. None of this was reported to a supervisor. COI Woods admits that all of this occurred except the part about him pouring water on the inmate and his property.

Officer Woods then allegedly used force without provocation or just cause on another inmate, Anthony Crowe W/244898, whom Officer Woods felt like was pointing him out to another inmate concerning the incident in the above paragraph. The inmate was thrown to the floor and received a small laceration to his eyebrow/temple area. It is alleged that Officer Woods straddled the inmate and punched him several times with a closed fist. Officer Woods admitted to using force, and applying restraints to the inmate, but claims it was justified. Officer Woods then, approximately 15 minutes later, removed the handcuffs from the inmate. This incident was not reported to a supervisor either.

The incidents were only reported to a supervisor when a large number of inmates stormed out of the dorm and assistance arrived. A subsequent use of force on inmate Ronald Mosley W/132340 occurred (not by COI Woods) in the process of gaining order.

No serious injuries resulted, but due to the alleged violations of ADOC AR 208, and the nature of these violations, I would appreciate any assistance that your division can provide to determine the facts of the incidents. It is obvious that Officer Woods is due disciplinary action, but the allegations are such that extreme action will be necessary.

I have mandated that COI Woods be placed on the 55 hours of accumulated holiday leave as of this date. It will likely be my recommendation that he be placed on mandatory annual leave to isolate him from the inmate population pending outcome of your investigation. Additionally, he was told not to work overtime at any institution pending outcome of this investigation.

Thank you for your usual cooperation.

*Moseley v. Horton*
*00033*

Telephone (334) 567-1460                                        Fax (334) 567-1804

# EVIDENCE FORM

INSTITUTION: _Elmore Correctional Center_    CASE NUMBER: ECC-06-668 A,B, C,D

DATE: _____ May 5, 2006    TIME: _____ 9:30 PM

LOCATION FOUND: B Dorm Cubicle from inmate James Thomas W/237650, then again from trash can carried from Cubicle to Shift Office.

VICTIM: N/A

OFFENSE: #64, Possession of Contraband

SUSPECT(S): Inmate James Thomas W/237650

TYPE OF EVIDENCE: Pills

DESCRIPTION OF EVIDENCE: One (1) round white pill, one (1) blue oval shaped capsule One (1) of the pills was crushed.

CHAIN OF EVIDENCE: (Signature) _Frederick Woods_

DATE: 5/5/06    TIME: 5:35 pm

(Signature) _Hugh F Nixon, COII_

DATE: 5/5/06    TIME: 10:20 pm

(Signature) Lt. Robert Rogers _Robert Rogers_

DATE: 5/8/06    TIME: 6:00 PM

(Signature) _____

DATE: _____    TIME: _____

(Signature) _____

DATE: _____    TIME: _____

INVESTIGATOR: _C P Barfoot_    DATE: 5-18-06    TIME: 11:05 A

_ALL EVIDENCE MUST BE PROPERLY SEALED AND SIGNED FOR!_

# Alabama Department of Corrections
## Duty Officer Report

Class Code  **B**

Type of Incident:  **#56, #57 (Use of Force)**          Institution:  **Elmore Correctional Center**

| | | | | | |
|---|---|---|---|---|---|
| Victim(s): | **N/A** | AIS# | R/S | DOB | |
| | | AIS# | R/S | DOB | |
| Suspects(s): | **Anthony Crowe** | AIS# **244898** | R/S **W** | DOB **11/01/1986** |
| | **Ronald Moseley** | AIS# **132340** | R/S **W** | DOB **05/11/1958** |
| | | AIS# | R/S | DOB | |

Sentenced From:  **Talladega**                     Date of Sentence:  **01/23/06**
                 **Clarke**                                         **06/28/82**
Offense(s):  **Forgery II**                        Length of Sentence:  **3 yrs.**
             **Murder, Attempt to Committ**                              **25 yrs.**
Minimum Release Date:  **Crowe 09/23/08 and Moseley 09/23/2006**

Date:  **05/05/06**      Time:  **9:50 pm**      Location:  **B2 Dorm, Cubical and Living Area.**

Brief Narrative: On 05/05/06, at approximately 9:50 p.m., an incident took place in B2 dorm cubical between Officer Frederick Woods and inmate Anthony Crowe, W/244898.  The incident caused the dorm to become unruly.  While trying to put the inmates on their bunks inmate Ronald Mosley, W/132340, refused to go to his bunk and had to be escorted to the shift office.  Once the dorm settled down several inmates that claim they saw what took place between COI Woods and inmate Crowe were told to report to the office and write statements.  At approximately 10:55 p.m., Warden Steve Watson was notified via telephone call.  Body charts were completed on inmates Crowe, Moseley and COI Woods for cuts and bruises.  A first report of injury was completed for COI Woods.  The minimum amount of force was used to escort inmate Moseley out of the dorm.

(Use ADOC Form 302-B for Continuation of narrative)

| | | | |
|---|---|---|---|
| Official Reporting: | **Sgt. Arthur Horton** | Date: **05/06/06** | Time: **2:44 a.m.** |
| Receiver of Report: | **Warden Willie Thomas** | | |
| Deputy Comm. of Operations: | **Greg Lovelace** | Date: | Time: |
| Inst. Coordinator: | **Roy Hightower** | Date: | Time: |
| Investigations: | | Date: | Time: |
| Public Information Officer: | | Date: | Time: |

ADOC Form 302-C – June 1, 2005

Message Confirmation Report

MAY-06-2006 02:38 AM SAT

Fax Number   :   334 514 5328
Name         :   SHIFT OFFICE

Name/Number    :   I&I / 3538922
Page           :   1
Start Time     :   MAY-06-2006 02:38AM SAT
Elapsed Time   :   00′ 34″
Mode           :   STD G3
Results        :       [O.K]

---

## Alabama Department of Corrections
## Duty Officer Report

Class Code _____

| Type of Incident: | #56, #57 (Use of Force) | | Institution: | Elmore Correctional Center |
|---|---|---|---|---|

| | | AIS# | R/S | | DOB | |
|---|---|---|---|---|---|---|
| Victim(s): | N/A | AIS# | R/S | | DOB | |
| | | AIS# | R/S | | DOB | |
| Suspects(s): | Anthony Crowe | 244898 | R/S | W | DOB | 11/01/1986 |
| | Ronald Moseley | 132340 | R/S | W | DOB | 05/11/1958 |
| | | AIS# | R/S | | DOB | |

Sentenced From:   Talladega                  Date of Sentence:   01/23/06
                  Clarke                                         06/28/82

Offense(s):   Forgery II                     Length of Sentence:   3 yrs.
              Murder, Attempt to Commit                           25 yrs.

Minimum Release Date:   Crowe 09/23/08 and

Date:   05/05/06     Time:   9:50 pm     Location:   B2 Dorm, Cubical and Living Area.

Brief Narrative: On 05/05/06, at approximately 9:50 p.m., an incident took place in B2 dorm cubical between Officer Frederick Woods and inmate Anthony Crowe, W/244898. The incident caused the dorm to become unruly. While trying to put the inmates on their bunks inmate Ronald Mosely, W/132340, refused to go to his bunk and had to be escorted to the shift office. Once the dorm settled down several inmates that claim they saw what took place between COI Woods and inmate Crowe were told to report to the office and write statements. At approximately 10:55 p.m., Warden Steve Watson was notified via telephone call. Body charts were completed on inmates Crowe, Moseley and COI Woods for cuts and bruises. A first report of injury was completed for inmate Woods. The minimum amount of force was used to escort inmate Moseley out of the dorm.

(Use ADOC Form 302-B for Continuation of narrative)

Official Reporting:   Sgt. Arthur Horton           Date:   05/06/06     Time:   2:44 n.m.

Receiver of Report:   Warden Willie Thomas

Deputy Comm. of Operations:   Greg Lovelace         Date: _____   Time: _____

Inst. Coordinator:   Roy Hightower                  Date: _____   Time: _____

Investigations: _____                 Date: _____   Time: _____

Public Information Officer: _____      Date: _____   Time: _____

ADOC Form 302-C – June 1, 2005

*Moseley v. Horton*
00036

## Message Confirmation Report

MAY-06-2006 02:38 AM SAT

Fax Number    :    334 514 5328
Name          :    SHIFT OFFICE

| | | |
|---|---|---|
| Name/Number | : | I&I / 3538922 |
| Page | : | 1 |
| Start Time | : | MAY-06-2006 02:38AM SAT |
| Elapsed Time | : | 00'34" |
| Mode | : | STD G3 |
| Results | : | [O.K] |

---

### Alabama Department of Corrections
### Duty Officer Report

Class Code _____

Type of Incident:  **#56, #57 (Use of Force)**        Institution:  **Elmore Correctional Center**

Victim(s):  **N/A**        AIS# _____  R/S ___  DOB _____

AIS# _____  R/S ___  DOB _____

Suspects(s):  **Anthony Crowe**        AIS# **244898**  R/S **W**  DOB **11/01/1986**

**Ronald Moseley**        AIS# **132340**  R/S **W**  DOB **05/11/1958**

AIS# _____  R/S ___  DOB _____

Sentenced From:  **Talledega**        Date of Sentence:  **01/23/06**

**Clarke**        **06/28/82**

Offense(s):  **Forgery II**        Length of Sentence:  **3 yrs.**

**Murder, Attempt to Commit**        **25 yrs.**

Minimum Release Date:  **Crowe 09/23/08 and**

Date:  **05/05/06**  Time:  **9:50 pm**  Location:  **B2 Dorm, Cubical and Living Area.**

Brief Narrative: On 05/05/06, at approximately 9:50 p.m., an incident took place in B2 dorm cubical between Officer Frederick Woods and inmate Anthony Crowe, W/244898. The incident caused the dorm to become unruly. While trying to put the inmates on their bunks inmate Ronald Mosley, W/132340, refused to go to his bunk and had to be escorted to the shift office. Once the dorm settled down several inmates that claim they saw what took place between COI Woods and inmate Crowe were told to report to the office and write statements. At approximately 10:55 p.m., Warden Steve Watson was notified via telephone call. Body charts were completed on inmates Crowe, Moseley and COI Woods for cuts and bruises. A first report of injury was completed for inmate Woods. The minimum amount of force was used to escort inmate Moseley out of the dorm.

_____

_____

_____

_____

_____

(Use ADOC Form 302-B for Continuation of narrative)

Official Reporting:  **Sgt. Arthur Horton**        Date:  **05/06/06**        Time:  **2:44 a.m.**

Receiver of Report:  **Warden Willie Thomas**

Deputy Comm. of Operations:  **Greg Lovelace**        Date: _____        Time: _____

Inst. Coordinator:  **Roy Hightower**        Date: _____        Time: _____

Investigations: _____        Date: _____        Time: _____

Public Information Officer: _____        Date: _____        Time: _____

ADOC Form 302-C – June 1, 2005

*Moseley v. Horton*
*00037*

# BLOOD/BODY FLUID EXPOSURE REPORT
## STATE EMPLOYEE INJURY COMPENSATION TRUST FUND (SEICTF)

NOTE:    **It is the responsibility of the employee's supervisor to complete Part I.**
**The employee must complete Part II.**
The supervisor must submit this form and the  First Report of Injury form by fax to
SEICTF at the time the injury is reported.
**FAX: (334) 223-6170 or toll-free: (888) 827-6753**
**IF QUESTIONS, CALL SEICTF: (334) 223-6162 or toll-free (800) 388-3406**

## PART I

1. Employee's Name __Woods__     __Frederick__
   Last              First              MI

2. Agency Name __Elmore C.C.__

3. Date of Incident __5/5/06__    4. Time of Incident __9:30__ ( ) A.M. (X) P.M.

5. Employee previously vaccinated against Hepatitis B (HBV): ___ No  _X_ Yes   Date:_____

6. Check the route of exposure:
   _____ Needle stick, contaminated          _____ Bite, skin broken
   _____ Needle stick, non-contaminated      _____ Bite, skin not broken
   _X_ Scratch, skin broken
   _____ Scratch, skin not broken
   _____ Splashing / spraying of blood or other potentially infectious material **
       ** List all known materials_____
       _____

   _____ Other, please describe:

7. Source of exposure known:    _____ Yes  _____ No
   Source tested:               _____ Yes  _____ No    Date_____

__Arthur Horton, COIII__                    Date __5/10/06__
Supervisor's Signature

ATTN: ADOC                TO: WARDEN WATSON
PERSONNEL                 These items have       f2
                          been faxed to
TOTAL 5 PAGES             SEICTF + DOC Personnel

Moseley v. Horton
00038

# PART II
### This section is to be completed by the potentially exposed employee.

Due to contact with blood, body fluid or other potentially infectious material, I understand that I may have been exposed to a bloodborne pathogen. In order to determine if this has happened, it may be necessary to test my blood for HIV (virus which causes AIDS), HBV (virus which causes Hepatitis B) and/or HCV (virus which causes Hepatitis C). I authorize the health care facility performing the testing, to release the test results to SEICTF and the follow-up physician.

I understand the results of these tests will be kept confidential and related costs will be paid by SEICTF. I further understand that SEICTF will have no responsibility to provide coverage to any state employee who refuses initial treatment, baseline blood testing, and/or release of test results for HIV, HBV and HCV.

**Important:** If HIV PEP medications are prescribed, you will be given the first dose in the emergency department and enough medication to last for up to 72 hours. The network gatekeeper physician, whom you will report to for all follow-up care, will write prescriptions for the rest of the medicines. **It is your responsibility to take the prescriptions to your local pharmacy immediately, or as soon as possible, so the pharmacy can order the medicines for you.**

**Sign ONE of the following:**

**A.)** I understand the above, have been given the opportunity to ask questions and agree to treatment.

| Frederick Woods | Frederick Woods | 5/11/06 |
|---|---|---|
| Print Employee Name | Employee's Signature | Date |
| Arthur Horton | Arthur Horton, COII | 5/10/06 |
| Print Supervisor's Name | Supervisor's Signature | Date |

**B.)** I understand the above, have been given the opportunity to ask questions and **REFUSE** medical treatment understanding that I am forfeiting my SEICTF benefits for this potential exposure.

| | | |
|---|---|---|
| Print Employee Name | Employee's Signature | Date |
| | | |
| Print Supervisor's Name | Supervisor's Signature | Date |

Page 2 of 2

AUTHORIZATION FOR INITIAL TREATMENT AND PHARMACY
STATE EMPLOYEE INJURY COMPENSATION TRUST FUND

## TO BE COMPLETED BY EMPLOYEE

If you desire program benefits, read and sign below. Benefits will not be authorized without your signature.

I hereby authorize any health care provider or facility which has treated me to furnish to any authorized agent of the Division of Risk Management any and all information which may be requested regarding my physical condition and treatment thereof, and to allow them and any authorized physician appointed by them to examine and obtain copies of any x-rays or records regarding my physical condition or treatment. A photostatic copy of this authorization is to be given the same force and effect as the original.

_Frederick Woods_  _5/11/06_
Employee Signature                    Date

## EMPLOYEE: Give completed copy to your supervisor immediately after receiving treatment

## TO BE COMPLETED BY SUPERVISOR

Employee Name: _Woods, Frederick_          S.S. # _417_ - _13_ - _0562_

Date of Injury: ___ / ___ / ___

Description of Accident / Injury: _____ _See Attached_

Supervisor's Signature: _Arthur Burton, CPII_        DATE _5/10/06_

Agency: _Department of Corrections_ Division/Facility: _Elmore Correctional Center_

********* When completed by supervisor and physician - fax immediately to SEICTF at (334) 223-6170 or 1-888-827-6753 *********

## TO BE COMPLETED BY PHYSICIAN

Diagnosis: _____

Work Status:    _____    May return to full duty

                _____    Out of work for ____ days, then return to work with restrictions (see below)

                _____    May return to work with the following restrictions for _____ days:

        Activity restrictions: _____

_____

_____

RETURN APPOINTMENT DATE: _____ / ___ / _____        _____ None Scheduled

_____Office Phone: _____
Physician Name (please print)

_____        ___ / ___ / ___
        Physician Signature            Date

## Physician's office: Instructions For Submitting Claim for Payment:

1. <u>Immediately</u> Fax copy of this form to SEICTF at 1 (888) 827-6753 (toll-free) or (334) 223-6285.
2. Give original to employee. Have employee take original back to the employer. Keep a copy in the employee's chart.
3. Claim filing:
   A. <u>**For authorization and timely payment, office notes must be sent to SEICTF:**</u> Fax to 1 (888) 827-6753 (toll-free) or mail to SEICTF: P.O. Box 303250; Montgomery, AL  36130-3250.
   B. Send claim to:
   (1) Blue Cross Blue Shield (Group 13000) - Use the WRI (not XAA) prefix with the SS#. Do not charge copays or deductibles. 100% reimbursement will be made.
   (2) HMO - File under Blue Cross Blue Shield (Group 13000). Use the WRI (not XAA) prefix with SS#. Do not charge copays or deductibles. 100% reimbursement will be made.
   (3) Call 1-800-977-0022 to confirm that the claim is compensable.
   Pharmacy:
   (1) Blue Cross Blue Shield - Use the WRI (not XAA) prefix with the SS#. Do not charge copays or deductibles. If unable to obtain authorization/confirmation call customer service at 1-800-216-9920.
   (2) HMO - File under Blue Cross Blue Shield (Group 13000). Use the WRI (not XAA) prefix with the SS#. Do not charge copays or deductibles. If unable to obtain authorization/confirmation call customer service at 1-800-216-9920.

SEICTF FORM 3-A (5/01)

*Moseley v. Horton*
00040

3157

AUTHORIZATION FOR INITIAL TREATMENT AND PHARMACY
## STATE EMPLOYEE INJURY COMPENSATION TRUST FUND

**TO BE COMPLETED BY EMPLOYEE**

If you desire program benefits, read and sign below. Benefits will not be authorized without your signature.

I hereby authorize any health care provider or facility which has treated me to furnish to any authorized agent of the Division of Risk Management any and all information which may be requested regarding my physical condition and treatment thereof, and to allow them and any authorized physician appointed by them to examine and obtain copies of any x-rays or records regarding my physical condition or treatment. A photostatic copy of this authorization is to be given the same force and effect as the original.

_Frederick Woods_ _____ _5/10/06_ _____
Employee Signature                          Date

## EMPLOYEE: Give completed copy to your supervisor immediately after receiving treatment

**TO BE COMPLETED BY SUPERVISOR**

Employee Name: _Frederick Woods_ _____ S.S. # _417_ - _13_ - _0567_

Date of Injury: _5 / 5 /06_

Description of Accident / Injury: _Scratch on Left hand First Finger._
_Altercation at work_

Supervisor's Signature: _____ DATE_____

Agency: _____ Division/Facility: _____

********* When completed by supervisor and physician - fax immediately to SEICTF at (334) 223-6170 or 1-888-827-6753 *********

**TO BE COMPLETED BY PHYSICIAN**

Diagnosis: _CBBE_

Work Status: __l__ May return to full duty

_____ Out of work for ____ days, then return to work with restrictions (see below)

_____ May return to work with the following restrictions for _____days:

Activity restrictions: _____

_3 wks_

RETURN APPOINTMENT DATE: ____ / ____ / ____     _____None Scheduled

_Michael C. Turner DO_ _____ Office Phone: _201-4445_
Physician Name (please print)

_____     _5 / 10 / 06_
Physician Signature                          Date

*permission to treat per Ann Jackson*

**Physician's office: Instructions For Submitting Claim for Payment:**

1. _Immediately_ Fax copy of this form to SEICTF at 1 (888) 827-6753 (toll-free) or (334) 223-6285.
2. Give original to employee. Have employee take original back to the employer. Keep a copy in the employee's chart.
3. Claim filing:

   A. **For authorization and timely payment, office notes must be sent to SEICTF:** Fax to 1 (888) 827-6753 (toll-free) or mail to SEICTF: P.O. Box 303250; Montgomery, AL  36130-3250.

   B. Send claim to:

   (1) Blue Cross Blue Shield (Group 13000) - Use the WRI (not XAA) prefix with the SS#. Do not charge copays or deductibles. 100% reimbursement will be made.

   (2) HMO - File under Blue Cross Blue Shield (Group 13000). Use the WRI (not XAA) prefix with SS#. Do not charge copays or deductibles. 100% reimbursement will be made.

   (3) Call 1-800-977-0022 to confirm that the claim is compensable.

   **Pharmacy:**

   (1) Blue Cross Blue Shield - Use the WRI (not XAA) prefix with the SS#. Do not charge copays or deductibles. If unable to obtain authorization/confirmation call customer service at 1-800-216-9920.

   (2) HMO - File under Blue Cross Blue Shield (Group 13000). Use the WRI (not XAA) prefix with the SS#. Do not charge copays or deductibles. If unable to obtain authorization/confirmation call customer service at 1-800-216-9920.

SEICTF FORM 3-A (5/01)

Moseley v. Horton
00041

**SOUTHEASTERN INDUSTRIAL & FAMILY MEDICINE ASSOCIATES**

**MICHAEL C. TURNER, D.O.**
BT6423951  •  AL DO643
1600 Forest Avenue
Montgomery, AL 36106 • 261-4445   FAX 261-4448

Name _Fredrick Woods_ Age _____

Address _____ Date _05/10/0C_

| | DRUG NAME | SIZE | DISP. | DIRECTIONS | REF. |
|---|---|---|---|---|---|
| 1 | Obtain Surg PH's | | | | |
| 2 | Lab Work | | | | |
| 3 | | | | | |

_____ M.D.          _____ M.D.
Product selection permitted          Dispense as written

*Moseley v. Horton*
00042

ALABAMA DEPARTMENT OF CORRECTIONS
DISCIPLINARY REPORT

DOC Form 225B (Revised 1/30/2004)

ECC06-668D    6 D days

1.  INMATE : Ronald Moseley          CUSTODY: Min          AIS NO.: W/132340

2.  FACILITY: **Elmore Correctional Center**

3.  The above named inmate is being charged by Sergeant Felisha Blanding with violation of rule #56 specifically **Failure to Obey a Direct Order** from regulation # 403, which occurred on or about **May 5,** 2006 at (time) 10:15 p.m.(am / pm), Location: **Administative Building**. A hearing on this charge will be held after 24 hours from service.

4.  Circumstances of the violation(s) are as follows: On May 5, 2006, inmate Ronald Moseley, W/132340, was instructed to be quiet by Sergeant Blanding after being instructed to be quiet twice by Officer Kendrick Boyd. Inmate Moseley did not comply with the orders given and continued to talk loud in a disrespectful tone.

Sergeant Felisha Blanding                          _Felisha Blanding, COII_
Arresting Officer / Typed / Rank                   Arresting Officer / Signature / Rank

5.  I hereby certify that I have personally served a copy of the foregoing upon the above named inmate and I informed inmate of his/her right to present a written or oral statement at the hearing and to present written questions for the witnesses on this the _7th_ day of _May_, 2006, at (time) _1:53am_ (am/pm).

_Jerome M Arnold COT_                      _refuse to sign J Arnold M COT_
Serving Officer / Signature / Rank            Inmate's Signature / AIS Number

6.  Witnesses desired?     NO _____         YES X _refuse to sign J Arnold M CO_
                              Inmate's Signature              Inmate's Signature

7.  If yes, list: _God is his witness_

8.  Hearing Date _11 MAY 2006_     Time _10:34 Pm_     Place _SHIFT OFFICE_

9.  Inmate must be present in Hearing Room. If he/she is not present explain in detail on additional page and attach.

10. A finding is made that inmate (is / ~~is not~~) capable of representing him/herself.

                              _Jusk COT  Randy Frank COT_
                              Signature / Hearing Officer

11. Plea: _Refused I Sign Randy Jusk COT_  Not Guilty  _____ Guilty

12. The Arresting Officer, Inmate, and all witnesses were sworn to tell the truth.

                              _Randy Frank COT_
                              Signature / Hearing Officer

13. Arresting Officer's testimony (at the hearing): On May 5, 2006 Inmate Ronald Moseley W/132340 was instructed to be quiet by Sergeant Blanding after being instructed to be quiet twice by Officer Kendrick Boyd. Inmate Moseley did not comply with the orders given and continued to talk loud in a disrespectful tone.

_____
_____
_____

COMPUTER
DATE 5-19-06

Annex C to AR 403   (Page 1 of 3 pages)

**Moseley v. Horton**
**00043**                    3

14. Inmate's Testimony:  Not guilty.

Witness: _____    Substance of Testimony: _____

Witness: _____    Substance of Testimony: _____

Witness: _____    Substance of Testimony: _____

15. The Inmate was allowed to submit written question to all witnesses.  Copy of questions and answers are attached.

_Randy Frank COII_
Signature / Hearing Officer

16. The Following witnesses were not called     -     reason not called
    1. _____    _____
    2. _____    _____
    3. _____    _____

17. After hearing all testimony, the Hearing Officer makes the following findings of fact: (Be Specific)
    The Hearing Officer finds that :   Inmate Moseley was in violation of Rule #56-Failure To
    Obey A Direct Order when he failed to be quiet as instructed by Sgt. Blanding.

18. Basis for Finding of Fact:   The Hearing Officer believed the Arresting Officer's testimony
    and Inmate Moseley offered no defense.

19. Hearing Officer's Decision:          X    Guilty          _____ Not Guilty

20. Recommendation of Hearing Officer:   60 days loss of visiting, pass/leave, phone, store
    and tv/radio/movie privileges; Recommend a custody review.

_Roy Frank COII_
Signature / Hearing Officer

_Randy Frank, COII_
Typed Name and Title

21. Warden's Action – Date   5-16-06
    (Approved)   _Charles Bromley, CoSI_
    Disapproved
    Other (specify)

22. Reason if more then 30 calendar days delay in action.

23. I hereby certify that a completed copy of the foregoing Disciplinary Report was served on the above named inmate on
    this the  20  day of  May  2006, at (time)  1:30  (am)/ pm).

_____ COI        Refuse to Sign   _au Jay_ COI
Signature / Serving Officer / Title        Inmate's Signature/AIS Number
                                           Annex C of AR 403 (page 2 of 3 pages)

Moseley v. Horton
00044

ALABAMA DEPARTMENT OF CORRECTIONS
MENTAL HEALTH SERVICES
MENTAL HEALTH CONSULTATION TO DISCIPLINARY PROCESS

Inmate Name: Ronald Moseley                    AIS#: W/132340

Institution: Elmore Correctional Center        Date of Disciplinary Report: May 5, 2006

Is the inmate currently on the mental health caseload?        ☒ Yes    ☐ No
   If Yes, referred for mental health evaluation/consultation on:

## HEARING OFFICER:

Hearing officer must refer the inmate for mental health consultation if the inmate appears unable to understand what the charge is and what might happen as a result of the charge or the inmate appears unable to actively participate in the hearing as suggested by the following:

| Does the inmate know where he is? | Does the inmate know what date it is? | Does inmate know why he is seeing hearing officer? |
| Is the inmate appropriately dressed? | Is inmate able to speak coherently? | Does the inmate avoid eye contact? |
| Does the inmate make sense? | Are the inmate's statements logical and organized or unusual? | |

Should the inmate be referred for mental health evaluation of competency?        ☐ Yes    ☐ No
   If Yes, referred for mental health evaluation/consultation on:

## MENTAL HEALTH STAFF:

Date request for consult received: 5/08/06          Date consult returned: 5/08/06

Is the inmate competent to participate in the hearing?                          ☒ Yes    ☐ No
   If No, why is the inmate not competent?

   If No, what treatment will assist the inmate in becoming competent?

Are there mental health issues that may have impacted inmate's behavior at the time of the charge?    ☐ Yes    ☒ No
   If Yes, briefly describe the issues:

Are there mental health issues to be considered regarding disposition of inmate found guilty?    ☐ Yes    ☒ No
   If Yes, briefly describe the issues and possible relation to the disposition:

Does mental health staff want to be present at the disciplinary hearing to provide input?    ☐ Yes    ☒ No
Mental Health Staff Member: Lynn H. Lewis, P.A. II    Phone Contact: 567-1471

## DISCIPLINARY HEARING:

Does the inmate appear to be competent to participate in the hearing?        ☐ Yes    ☐ No

Have the mental health recommendations been considered?                      ☐ Yes    ☐ No

Hearing Officer: Randy Twant                Date: 5/11, 2006

| Inmate Name | Ronald Moseley | AIS# | W/132340 |

Moseley v. Horton
00045

_Start 5-15-06 end 7-19-06_     _to 38-06 65 days_

ALDOC Form 225B

_Typographical error corrected 132390 @ 5/10/06_

## ALABAMA DEPARTMENT OF CORRECTIONS
## DISCIPLINARY REPORT

1. Inmate: **Moseley, Ronald**     Custody: **Min.**     AIS: ~~W/244898~~

2. Facility: **ELMORE CORRECTIONAL CENTER**

3. The above named inmate is being charged by **Sgt. Arthur Horton** with violation of rule number **56** specifically **Failure to Obey a Direct Order of ADOC Official** from regulation # **403** which occurred on or about **05/05**, 2006 at (time) **9:50** (am / pm), Location: **B2 Dorm**. A hearing on this charge will be held after 24 hours from service.

4. Circumstances of the violation(s) are as follows: <u>Sgt. Horton ordered inmate Moseley to get on his rack several times, inmate Moseley did not comply with this order</u>.

    **05/06/06**                       _Arthur Horton, Sgt_
     Date                          Arresting Officer / Signature / Rank

5. I hereby certify that I have personally served a copy of the foregoing upon the above named inmate and I informed inmate of his/her right to present a written or oral statement at the hearing and to present written questions for the witnesses on this the ___9___ day of ___MAY___, 2006, at (time) ___7:40___ (am/pm).

    _P. Custer CO-1_                   _REFUSED TO SIGN, ___ CO-1_
    Serving Officer / Signature / Rank         Inmate's Signature / AIS Number

6. Witnesses desired?    **NO** _____    (**YES**) _REFUSED TO SIGN, ___ CO-1_
                         Inmate's Signature                 Inmate's Signature

7. If yes, list: _GOD_

8. Hearing Date ___5/10/06___    Time ___8:18 pm___    Place ___Ecc shift office___

9. Inmate must be present in Hearing Room. If he/she is not present explain in detail on additional page and attach.

10. A finding is made that inmate (**is**)/ is not) capable of representing himself.

    _____ Co II_
         Signature / Hearing Officer

11. Plea: _not present to sign_ (**Not Guilty**)        ~~Guilty~~
       _See attached (C-1)_

12. The Arresting Officer, Inmate, and all witnesses were sworn to tell the truth.

    _____ Co II_
         Signature / Hearing Officer

ENTERED IN COMPUTER
DATE: ___5-16-06___
SIGN: ___PH___

Annex C to AR-403 (Page 1 of 5)

13.   Arresting Officer's testimony  (at the hearing):   __Same as stated on disciplinary__

14.   Inmate's Testimony:   __None__

Witness:  __N/A__                    Substance of Testimony:  __N/A__

Witness: _____         Substance of Testimony: _____

Witness: _____         Substance of Testimony: _____

15.   The inmate was allowed to submit written question to all witnesses.  Copy of questions and answers are attached.
       _____
       Signature / Hearing Officer

16.   The following witnesses were not called  -  Reason not called

       1.  __N/A__                          __N/A__
       2.  _____         _____
       3.  _____         _____

*Moseley v. Horton*
00047

Annex C to AR 403  (Page 1 of 5)

17.    After hearing all testimony, the hearing Officer makes the following finding of fact: (Be Specific)
The Hearing Officer finds that:    **The hearing officer finds that on 5/5/06, Inmate Moseley did Fail to**

**Obey a Direct of an ADOC Official when he was ordered to get on his rack several times.  Inmate Moseley**

**did not comply with Sgt. Hortons order.**

18.    Basis for Finding of Fact:    **The hearing Officers believes the sworn statement of the arresting Officer and**

**Inmate Moseley did not attempt to defend himself with testimony.**

19.    Hearing Officer's Decision:    __XX__    Guilty    _____    Not Guilty

20.    Recommendation of Hearing Officer:    **Loss of all priviledges, Telephone, Visiting and Store for 65 days.**

_____
Signature / Hearing Officer
**Mark Loman, COII**
Typed Name and Title

21.    Warden's Action – Date    **5-15-06**
(Approved)    _Lt. Charles Bromley_
Disapproved
Other (specify)    _____

22.    Reason if more then 30 calendar days delay in action.    _____

23.    I hereby certify that a completed copy of the foregoing Disciplinary Report was served on the above
Named inmate on this the __15th__ day of __May__ 200_6_ at (time) _6:19_ (am) (pm)

_Pam A. Marvin_ COI                _Ronald Moseley_ 132308
Signature / Serving Officer / Title                Inmate's Signature and AIS Number

**Moseley v. Horton**
**00048**

Annex C to AR 403  (Page 2 of 5)

On May 10, 2006 while conducting a disciplinary hearing whereby Inmate Ronald Moseley was charged with Failure to Obey a Direct Order of ADOC Official. Inmate Moseley became irate and did not wish to participate any longer in the disciplinary hearing. Inmate Moseley stated that I don't want to hear anything that is null and void, and walked out of the room when I began reading the charges.. Inmate Moseley was upset because the AIS # was not his own number, but the number of another inmate. It was explained that this was a typographical error.

Mark Loman, COII

## ALABAMA DEPARTMENT OF CORRECTIONS
## MENTAL HEALTH SERVICES
## MENTAL HEALTH CONSULTATION TO DISCIPLINARY PROCESS

**Inmate Name:** Ronald Moseley        **AIS#:** W/132340

**Institution:** Elmore Correctional Center        **Date of Disciplinary Report:** May 5, 2006

Is the inmate currently on the mental health caseload?
If Yes, referred for mental health evaluation/consultation on:        ☒ Yes        ☐ No

## HEARING OFFICER:

Hearing officer must refer the inmate for mental health consultation if the inmate appears unable to understand what the charge is and what might happen as a result of the charge or the inmate appears unable to actively participate in the hearing as suggested by the following:

Does the inmate know where he is?            Does the inmate know what date it is?            Does inmate know why he is seeing hearing officer?
Is the inmate appropriately dressed?          Is inmate able to speak coherently?              Does the inmate avoid eye contact?
Does the inmate make sense?                      Are the inmate's statements logical and organized or unusual?

Should the inmate be referred for mental health evaluation of competency?        ☐ Yes        ☐ No
If Yes, referred for mental health evaluation/consultation on:

## MENTAL HEALTH STAFF:

Date request for consult received: *5/08/06*        Date consult returned: *5/08/06*

Is the inmate competent to participate in the hearing?
If No, why is the inmate not competent?        ☒ Yes    ☐ No

If No, what treatment will assist the inmate in becoming competent?

Are there mental health issues that may have impacted inmate's behavior at the time of the charge?        ☐ Yes    ☒ No
If Yes, briefly describe the issues:

Are there mental health issues to be considered regarding disposition of inmate found guilty?        ☐ Yes    ☒ No
If Yes, briefly describe the issues and possible relation to the disposition:

Does mental health staff want to be present at the disciplinary hearing to provide input?        ☐ Yes    ☒ No
Mental Health Staff Member: *Lynn H. Lewis, P.A. II*  Phone Contact: *567-1471*

## DISCIPLINARY HEARING:

Does the inmate appear to be competent to participate in the hearing?        ☒ Yes        ☐ No
Have the mental health recommendations been considered?        ☐ Yes        ☐ No

Hearing Officer: *_____ COII*        Date: *5/10/06*

| Inmate Name | Ronald Moseley | AIS# | W/132340 |
|---|---|---|---|

Moseley v. Horton
00050

*start 5-15-06 end 6-29-06*    *45 days*

ALDOC Form 225B

*TYPographical error corrected on 5/10/ (FH)*
*132340*

## ALABAMA DEPARTMENT OF CORRECTIONS
### DISCIPLINARY REPORT

1. Inmate: **Moseley, Ronald**          Custody: **Min.**          AIS: **W/~~244898~~** (FH)

2. Facility: **ELMORE CORRECTIONAL CENTER**

3. The above named inmate is being charged by <u>**Sgt. Arthur Horton**</u> with violation of rule number **57** specifically <u>**Insubordination**</u> from regulation # **403** which occurred on or about **05/05**, 2006 at (time) **9:50** (am/pm) Location: **B2 Dorm** . A hearing on this charge will be held after 24 hours from service.

4. Circumstances of the violation(s) are as follows: <u>**On 05/05/06, at approximately 9:50 p.m., inmate Moseley became insubordinate when he was told to get on his rack by stating, "I wish that mother fucker would put his hands on me", "Fuck Nigger", while pointing his cane at COI Woods. Inmate Moseley had to be escorted out of the dorm.**</u>

   <u>05/06/06</u>                    *Arthur Horton, Cert*
   Date                              Arresting Officer / Signature / Rank

5. I hereby certify that I have personally served a copy of the foregoing upon the above named inmate and I informed inmate of his/her right to present a written or oral statement at the hearing and to present written questions for the witnesses on this the **9** day of **MAY**, 2006, at (time) **7:30** (am/pm).

   *P. Lawson CO1*                    *REFUSED TO SIGN P. [?] CO1*
   Serving Officer / Signature / Rank        Inmate's Signature / AIS Number

6. Witnesses desired?    NO _____        (YES) *REFUSED TO SIGN P. [?] CO1*
                         Inmate's Signature                    Inmate's Signature

7. If yes, list: *GOD*

8. Hearing Date **5/10/06**       Time **7:40 pm**       Place **Ecc shift office**

9. Inmate must be present in Hearing Room. If he/she is not present explain in detail on additional page and attach.

10. A finding is made that inmate (is)/ ~~is not~~ capable of representing himself.
    *[signature] COII*
    Signature / Hearing Officer

11. Plea: *Not present to sign See Attached (FH)*    (Not Guilty)    ~~Guilty~~

12. The Arresting Officer, Inmate, and all witnesses were sworn to tell the truth.
    *[signature] COII*
    Signature / Hearing Officer

Moseley v. Horton
00051

*3*

ENTERED IN COMPUTER
DATE: **5-16-06**
SIGNED: *FH*

Annex C to AR 403 (Page 1 of 5)

13.   Arresting Officer's testimony  (at the hearing):   __Same as stated on disciplinary__

14.   Inmate's Testimony:   __None__

Witness:   __N/A__                          Substance of Testimony:  __N/A__

Witness:   _____            Substance of Testimony:  _____

Witness:   _____            Substance of Testimony:  _____

15.   The inmate was allowed to submit written question to all witnesses.  Copy of questions and answers are attached.

_____
Signature / Hearing Officer

16.   The following witnesses were not called  -  Reason not called

1.  __N/A__                       __N/A__

2.  _____          _____

3.  _____          _____

*Moseley v. Horton*
00052

17. After hearing all testimony, the hearing Officer makes the following findings of fact: (Be Specific)

The Hearing Officer finds that:    The hearing officer finds that on 5/5/06, Inmate Moseley did become insubordinate when he was told to get on his rack by stating, " I wish that mother fucker would put his hands on me", "Fuck Nigger", while pointing his cane at COI Woods.

18. Basis for Finding of Fact:    The hearing Officers believes the sworn statement of the arresting Officer and Inmate Moseley did not attempt to defend himself with testimony.

19. Hearing Officer's Decision:    **XX**    Guilty    _____    Not Guilty

20. Recommendation of Hearing Officer:    Loss of all priviledges, Telephone, Visiting and Store for 45 days.

Signature / Hearing Officer

**Mark Loman, COII**
Typed Name and Title

21. Warden's Action – Date    5 - 15 - 06

(Approved)    Lt. Charles Bromley

Disapproved    _____

Other (specify)    _____

22. Reason if more then 30 calendar days delay in action.    _____

23. I hereby certify that a completed copy of the foregoing Disciplinary Report was served on the above Named inmate on this the  15th  day of  May  2006 at (time) 6:22 (am /pm).

Signature / Serving Officer / Title

Inmate's Signature and AIS Number  133340

Moseley v. Horton
00053

On May 10, 2006 while conducting a disciplinary hearing whereby Inmate Ronald Moseley was charged with insubordination. Inmate Moseley became irate and did not wish to participate any longer in the disciplinary hearing. Inmate Moseley stated that he would rather not be here because his rights were already violated. Inmate Moseley was upset because the AIS # was not his own number, but the number of another inmate. It was explained that this was a typographical error.

Mark Loman, COII

# ALABAMA DEPARTMENT OF CORRECTIONS
## MENTAL HEALTH SERVICES
### MENTAL HEALTH CONSULTATION TO DISCIPLINARY PROCESS

Inmate Name: __Ronald Moseley__          AIS#: __W/132340__

Institution: __Elmore Correctional Center__     Date of Disciplinary Report: __May 5, 2006__

Is the inmate currently on the mental health caseload?          ☒ Yes     ☐ No
If Yes, referred for mental health evaluation/consultation on: _____

## HEARING OFFICER:

Hearing officer must refer the inmate for mental health consultation if the inmate appears unable to understand what the charge is and what might happen as a result of the charge or the inmate appears unable to actively participate in the hearing as suggested by the following:

Does the inmate know where he is?          Does the inmate know what date it is?          Does inmate know why he is seeing hearing officer?
Is the inmate appropriately dressed?          Is inmate able to speak coherently?          Does the inmate avoid eye contact?
Does the inmate make sense?          Are the inmate's statements logical and organized or unusual?

Should the inmate be referred for mental health evaluation of competency?          ☐ Yes     ☐ No
If Yes, referred for mental health evaluation/consultation on: _____

## MENTAL HEALTH STAFF:

Date request for consult received: __5/08/06__          Date consult returned: __5/08/06__

Is the inmate competent to participate in the hearing?          ☒ Yes     ☐ No
If No, why is the inmate not competent?

If No, what treatment will assist the inmate in becoming competent?

Are there mental health issues that may have impacted inmate's behavior at the time of the charge?          ☐ Yes     ☒ No
If Yes, briefly describe the issues:

Are there mental health issues to be considered regarding disposition of inmate found guilty?          ☐ Yes     ☒ No
If Yes, briefly describe the issues and possible relation to the disposition:

Does mental health staff want to be present at the disciplinary hearing to provide input?          ☐ Yes     ☒ No
Mental Health Staff Member: _Lynn H. Lewis, P.A. II_  Phone Contact: __567-1471__

## DISCIPLINARY HEARING:

Does the inmate appear to be competent to participate in the hearing?          ☒ Yes     ☐ No
Have the mental health recommendations been considered?          ☒ Yes     ☐ No

Hearing Officer: _____ COII          Date: __5/10/06__

| Inmate Name | Ronald Moseley | AIS# | W/132340 |
|---|---|---|---|

Moseley v. Horton
00055

ᴮAMA DEPARTMENT OF CORRECTIOᴺ
DISCIPLINARY REPORT

7-19-06

DOC Form 225B (Revised 1/30/2004)

ECC06- 668C     60 days

1.  INMATE : Ronald Moseley     CUSTODY: Min     AIS NO.: W/132340

2.  FACILITY: **Elmore Correctional Center**

3.  The above named inmate is being charged by Sergeant Felisha Blanding with violation of rule #57 specifically **Insubordination** from regulation # **403**, which occurred on or about **May 5**, 2006 at (time) **10:15 p.m.**(am /pm), Location: **Administative Building.** A hearing on this charge will be held after 24 hours from service.

4.  Circumstances of the violation(s) are as follows: On May 5, 2006, inmate Ronald Moseley, W/132340, was instructed to be quiet by Sergeant Blanding. Inmate Moseley stated, "No, you shut up, you shut the fuck up". Inmate Moseley's actions constitute violation Rule #57, Insubordination. .

Sergeant Felisha Blanding     _Felisha Blanding, COᴼ_
Arresting Officer / Typed / Rank     Arresting Officer / Signature / Rank

5.  I hereby certify that I have personally served a copy of the foregoing upon the above named inmate and I informed inmate of his/her right to present a written or oral statement at the hearing and to present written questions for the witnesses on this the ___7ᵗʰ___ day of ___May___, 2006, at (time) ___1:50qm___ (am/pm).

_Juanet McDonald COᴵ_     X refuse to sign _Juanet McDonald COᴵ_
Serving Officer / Signature / Rank     Inmate's Signature / AIS Number

6.  Witnesses desired?     NO X     YES X refuse to sign _Juanet McDonald COᴵ_
                          Inmate's Signature            Inmate's Signature

7.  If yes, list: _Good is his witness_

8.  Hearing Date _11 MAY 2006_     Time _10:38 PM_     Place _SHIFT OFFICE_

9.  Inmate must be present in Hearing Room. If he/she is not present explain in detail on additional page and attach.

10. A finding is made that inmate (is / is not) capable of representing him/herself.

_Roy J. Neal_     _Nancy Funk COᴮ_
                 Signature / Hearing Officer

11. Plea: X refused to sign Roy J Neal ___ Not Guilty     _____ Guilty

12. The Arresting Officer, Inmate, and all witnesses were sworn to tell the truth.

_Nancy Funk COᴮ_
Signature / Hearing Officer

13. Arresting Officer's testimony (at the hearing): On May 5, 2006, Inmate Ronald Moseley W/132340 was instructed to be quiet by Sergeant Blanding. Inmate Moseley stated, "No, you shut up, you shut the fuck up." Inmate Moseley's actions constitute violation Rule #57- Insubordination.

IN COMPUTER

**Moseley v. Horton**
**00056**

DATE: ___Annex C to AR 403 (Page 1 of 3 pages )___
SIGNED: _RH_

5-19-06

3

14.  Inmate's Testimony:  Not guilty.

_____

Witness: _____    Substance of Testimony: _____

_____

Witness: _____    Substance of Testimony: _____

Witness: _____    Substance of Testimony: _____

15.  The Inmate was allowed to submit written question to all witnesses.  Copy of questions and answers are attached.

Signature / Hearing Officer

16.  The Following witnesses were not called    -    reason not called
     1. _____    _____
     2. _____    _____
     3. _____    _____

17.  After hearing all testimony, the Hearing Officer makes the following findings of fact: (Be Specific)
     The Hearing Officer finds that :   Inmate Moseley was in violation of #57-Insubordination
     when he stated to Sgt. Blanding, "No, you shut up, you shut the fuck up."

18.  Basis for Finding of Fact:   The Hearing Officer believed the Arresting Officer's testimony.
     Inmate Moseley offered no defense, only I'm not guilty.

19.  Hearing Officer's Decision:    ___X___ Guilty          _____ Not Guilty

20.  Recommendation of Hearing Officer:   60 days loss of visiting, pass/leave, phone, store
     and tv/radio/movie privileges; Recommend a custody review.

Signature / Hearing Officer

Randy Frank, COII
Typed Name and Title

21.  Warden's Action – Date   5-16-06
     Approved    Charles Dromley, COSI
     Disapproved
     Other (specify)

22.  Reason if more then 30 calendar days delay in action.

23.  I hereby certify that a completed copy of the foregoing Disciplinary Report was served on the above named inmate on
     this the   20   day of   May   2006, at (time)  1:31  (am / pm).

Signature / Serving Officer / Title          Inmate's Signature/AIS Number  Refuse to Sign

# ALABAMA DEPARTMENT OF CORRECTIONS
## MENTAL HEALTH SERVICES
### MENTAL HEALTH CONSULTATION TO DISCIPLINARY PROCESS

**Inmate Name:** Ronald Moseley    **AIS#:** W/132340

**Institution:** Elmore Correctional Center    **Date of Disciplinary Report:** May 5, 2006

Is the inmate currently on the mental health caseload?    ☒ Yes    ☐ No
If Yes, referred for mental health evaluation/consultation on:

## HEARING OFFICER:
Hearing officer must refer the inmate for mental health consultation if the inmate appears unable to understand what the charge is and what might happen as a result of the charge or the inmate appears unable to actively participate in the hearing as suggested by the following:

Does the inmate know where he is?    Does the inmate know what date it is?    Does inmate know why he is seeing hearing officer?
Is the inmate appropriately dressed?    Is inmate able to speak coherently?    Does the inmate avoid eye contact?
Does the inmate make sense?    Are the inmate's statements logical and organized or unusual?

Should the inmate be referred for mental health evaluation of competency?    ☐ Yes    ☐ No
If Yes, referred for mental health evaluation/consultation on:

## MENTAL HEALTH STAFF:
Date request for consult received: _5/08/06_    Date consult returned: _5/08/06_

Is the inmate competent to participate in the hearing?    ☒ Yes  ☐ No
If No, why is the inmate not competent?

If No, what treatment will assist the inmate in becoming competent?

Are there mental health issues that may have impacted inmate's behavior at the time of the charge?    ☐ Yes  ☒ No
If Yes, briefly describe the issues:

Are there mental health issues to be considered regarding disposition of inmate found guilty?    ☐ Yes  ☒ No
If Yes, briefly describe the issues and possible relation to the disposition:

Does mental health staff want to be present at the disciplinary hearing to provide input?    ☐ Yes  ☒ No
Mental Health Staff Member: _Lynn H. Lewis, P.A. II_  Phone Contact: _567-1471_

## DISCIPLINARY HEARING:
Does the inmate appear to be competent to participate in the hearing?    ☐ Yes    ☐ No
Have the mental health recommendations been considered?    ☐ Yes    ☐ No
Hearing Officer: _Randy Ward CW_    Date: _5/11/06_

| Inmate Name | Ronald Moseley | AIS# | W/132340 |
|---|---|---|---|

Moseley v. Horton
00058

cane profile
Bottom front of line profile
front of line profile
) NAE 6/26/03. Fir Health-Can do Selected Work DAM

**ALABAMA DEPARTMENT OF CORRECTIONS – PROGRESS REVIEW FORM –   APRIL 3, 2006**
==================================(COU122)==================================
IS #: 00132340   SSN: 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  RACE/SEX:  W/M    DATE OF BIRTH: 06/11/1958
AME: MOSELEY, RONALD AUSTIN     CUSTODY:   MIN9   SECURITY LEVEL: 4
NST: ELMORE CORRECTIONAL FACILITY   TIME SRVD:  24Y06M11 LAST DISC: 12 14 2005
RME: ATTEMPT MURDER        MIN REL DT: 09/23/2006 ACTIVE DET:  0

ISC: FAIL TO OBEY A DIRECT ORDER OF PRL CONS:   05/01/2006 EDUCAT LEV: 07

L/PGM: CS B2 3rd          PRIM OCCUP:UNKNOWN

RECOMMENDED INSTITUTION: Loxley CWC        RECOMMENDED CUSTODY: Out

USTIFICATION: All - Serving 25 years for Attempted Murder X2, Stabbed 2x-wife and her father several times during a dispute. Both are listed in Serious condition. No prior Felony Convictions. Has a 4 month Clean Record. Completed Bullock D.V. + A.M 4/29/05 Values Clarification and Reality Therapy 5/31/05. Was on Parole from 2/3/92 to 8/7/03 - violated due to Domestic Violence + Harassing Comm. Medically, he is disabled with degenerative disc disease, has cane and bottom Bunk profile. Has driver's license and can drive. Recommend Min Out Custody and assigned as a Van Driver (Knows Baldwin/mobile Counties-Was Van Driver of...

CERTIFY ENEMY LIST WAS REVIEWED AND UPDATED: NXE
                                          4/13/06
CLASSIFICATION SPECIALIST          DATE
Lynn H. Lewis P.A. II   4/13/06

Dissent to Elmore to EOS. Sept 06 Living ... at ... 4/13/06
WARDEN OR DESIGNEE          4/14/06
                                DATE

PSYCHOLOGIST/PSYCHOLOGIST'S ASSOC.    DATE     CLASSIFICATION COORDINATOR  DATE
Dissent: Recent disciplinary, unwillness to comply w/rules. LHC    Out setting to EOS

CENTRAL REVIEW BOARD ACTION

APPROVED __X__ DENIED; DIVERTED TO: ___   REASONS: _Fails criteria_
due to disciplinaries - Reclass

                    CRB MEMBER _____   DATE 6.2.06

APPROVED __X__ DENIED; DIVERTED TO: ___   REASONS: Doe not meet
Criteria - major disciplines 5/16/06, 5-15-06
                    CRB MEMBER _____   6/19/06

APPROVED ___ DENIED; DIVERTED TO: ___   REASONS: _____

                    CRB MEMBER _____   DATE

FINAL DECISION: INST _Elmore_ CUSTODY _Reclass_ DATE _6-2-06_

DATE INMATE INFORMED: _____ INMATE'S SIGNATURE: _Ronald A. Moseley_
                                          #132340

Last PR 5/05 N. change rcvd

SL Score 4

Moseley v. Horton
00059

# INMATE RECLASSIFICATION
## SECURITY LEVEL

Name _Moseley, Ronald Austin_     Number _132340_

SPECIALIST _____ 198 _____     DATE _4_ / _12_ / _06_

### 1. HISTORY OF INSTITUTIONAL VIOLENCE                                          _0_
Score

(Jail or prison, code most serious within last five years)
None ............................................................. 0
Assault not involving use of a weapon or resulting in serious injury ............... 3
Assault either weapon or serious injury but not both ........................ 5
Assault or fighting involving use of a weapon and/or resulting in
    serious injury or death ........................................ 7

### 2. Did above assault occur within last six months?                              _0_
Score
Yes ............................................................. 3
No .............................................................. 0

### 3. SEVERITY OF CURRENT OFFENSE                                                  _6_
Score
(Refer to the severity of offense scale on back of form. Score the most
serious offense if there are multiple convictions.)
Low ............................................................. 0
Low/Moderate ................................................... 2
Moderate ....................................................... 3
High ........................................................... 4
Highest ........................................................ 6

### 4. PRIOR ASSAULTIVE OFFENSE HISTORY                                             _0_
Score
(Score the most severe in inmate's history. Refer to the Severity of Offense Scale.)
None, Low, or Low/Moderate ..................................... 0
Moderate ....................................................... 3
High ........................................................... 4
Highest ........................................................ 5
Deduct 1 point from "Highest" Level if more than 5 years ago of free world time ...... -1
TOTAL (add items 1 through 4)                                                       _6_
TOTAL

If score is 10 or over, use Schedule A. If score is under 10, complete the
remainder of the scale.
If inmate now over 35 years old with no disciplinaries last 5 years and
score on schedule A 10 or 11, deduct 2 points and continue scoring using
Schedule B.

### 5. ESCAPE HISTORY (Rate last 5 years of incarceration)                         _0_
Score
No escapes or attempts ......................................... -3
An escape or attempt from equivalent of minimum or community based facility,
    no actual or threatened violence.
Over 1 year ago ................................................ 0
Within the last year ........................................... 1

*Moseley v. Horton*
00060

# INMATE RECLASSIFICATION
# SECURITY LEVEL

*Moseley, Ronald*
*# 132340*

An escape or attempt from equivalent of a level III or
higher facility or an escape from minimum or community
facility custody with actual or threatened violence:

| | |
|---|---|
| Over 1 year ago | 5 |
| Within the last year | 7 |
| 2 or more within 5 years | 8 |

### 6. TIME TO EARLIEST RELEASE

*9/27/06   E-05*

| | |
|---|---|
| 0-6 months | 0 |
| 7-12 months | 1 |
| 13-24 months | 3 |
| 25-36 months | 4 |
| More than 36 months | 5 |

Score: *0*

### 7. NUMBER OF DISCIPLINARY REPORTS

| | |
|---|---|
| None in the last 18 months | -3 |
| None in the last 12 months | -2 |
| None in the last 6 months | -1 |
| One in the last 6 months | 1 |
| Two or more major in last 6 months | 4 |

Score: *4*

### 8. MOST SEVERE DISCIPLINARY REPORT RECEIVED (Last 18 months)

| | |
|---|---|
| None | 0 |
| Low/Moderate | 1 |
| Moderate | 2 |
| High | 5 |
| Highest | 7 |

Score: *2*

### 9. CURRENT DETAINER (Score most serious)

| | |
|---|---|
| None | 0 |
| Notification only or misdemeanor | 0 |
| Felony- non-violent offense | 2 |
| Felony- violent offense or sentence to serve post-release | 4 |

Score: *0*

### 10. PRIOR FELONY CONVICTIONS

| | |
|---|---|
| None | 0 |
| One | 2 |
| Two or more | 4 |

Score: *0*

### 11. PROGRAM PARTICIPATION/COMPLETION (Maximum total -2 pts.)

| | |
|---|---|
| Intensive SAP (6Wks./8Wks./TCParticipation Min. 9 mos) | -2 |
| Increase Grade Level 3 Grades or GED | -2 |
| Complete Voc. Training or AA Degree Jr. College | -2 |

Score: *0*

TOTAL (Add items 1-11) Use Schedule B

Total Score: *9/13*

*Moseley v. Horton*
00061

Submit white copy (original) to CRB for approval. Retain pink copy for suspense in file until reviewed by CRB.

Page 2

# INMATE RECLASSIFICATION
## SECURITY LEVEL

*Moseley, Ronald*
*# 132340*

I.  Security Level indicated by point score _____ II~~IV~~

II. Recommended Security Level _____ *II*
    If I and II differ, give institutional special security level consideration(s).

| Code | Reason | | Code | Reason |
|------|--------|---|------|--------|
| _____ | _____ | | _____ | _____ |
| Code | Reason | | Code | Reason |
| _____ | _____ | | _____ | _____ |

III. Recommended Institution(s)

1.  Loxley ~~CWLO~~ CWC          2. _____
    If security level of institution(s) is inconsistent with recommended security level, list Special Institutional
    Placement Considerations.

1. _____ _____        2. _____ _____
   Code    Reason                  Code    Reason

## CENTRAL REVIEW BOARD

*IV/26*

_____
Approved Security Level

*needs reclassification hearing*

Reason(s) (if different from security level by score)

_____          *6-2-04*
Signature        *636*             Date

_____         _____
Approved Security Level            Reason(s) (if different from security level by score)

_____          _____
Signature                          Date

_____         _____
Approved Security Level            Reason(s) (if different from security level by score)

_____          _____
Signature                          Date

Submit white copy (original) to CRB for approval. Retain pink copy for suspense in file until reviewed by CRB.        Page 3

*Moseley v. Horton*
00062

Page 1 of 5

# INVESTIGATIVE REPORT

**ALABAMA DEPARTMENT OF CORRECTIONS**



**INVESTIGATION & INTELLIGENCE DIVISION**

Confidential-For Official Use Only

Offense: <u>Allegation of Officer's Misconduct</u>    Case No.: <u>ECC 06-668</u>    <u>06-9960</u>

Location: <u>Elmore Correctional Center</u>    County: <u>Elmore</u>    Date of Offense: <u>5-5-2006</u>

| Victim(s) | Subject(s) |
|---|---|
| James Thomas, W/M, AIS 237650 | |
| Anthony Crowe, W/M, AIS 244898 | COI Frederick Woods<br>COI Patrick Lucas |
| Ronald Moseley, W/M, AIS 132340 | |

## SYNOPSIS:

This case has three different incidents involved. The first incident will be concerning inmate James Thomas, W/M, AIS 237650. There are several undisputed facts in this case, that being that Correctional Officer Frederick Woods searched inmate James Thomas's locker box and found pills inside the locker box. The pills were confiscated and COI Frederick Woods had inmate James Thomas come to the cube. At that time, COI Woods wrapped the pills in paper and poured water on the paper and threw the pills into the trashcan in the cube of B-Dorm. In this incident, COI Woods stated he made inmate Thomas turn around in a circle with his arms out one time so he could observe inmate Thomas' body for tattoos. Other inmates stated that inmate Thomas was made to turn around between one and several times. The disputed fact in this case is whether or not COI Frederick Woods poured water down inmate Thomas' back. There are seven inmates that alleged that they observed COI Woods pour water down inmate Thomas' back. It is undisputed that inmate Thomas was then told to go get a mop and come back to mop up the cube, which inmate Thomas did.

| Criminal ____ Unfounded ____ | Non-Criminal ____ Pending Investigation ____ Cleared by Arrest ____ | Internal   x____ Closed or Inactive x____ Not Cleared |
|---|---|---|

| Copies of Report to Commissioner | | |
|---|---|---|
| D/A   x | *Moseley v. Horton*<br>00063 | Date of Report   May 31, 2006 |
| D/C | | Report Made by   C. P. Barfoot |
| Other   Warden W. Thomas | | Report Typed by   Casandra Henderson |

CC: Warden Watson  Capt. Moore

The second incident involves inmate Anthony Crowe, W/M, AIS 244898. This incident occurred as a result of the incident with inmate James Thomas. Correctional Officer Frederick Woods observed inmate Anthony Crowe, W/M, AIS 244898, pointing at him (Woods). At this time, Officer Frederick Woods took inmate Anthony Crowe into the cube. After both Officer Woods and inmate Crowe entered the cube, there was a tussle between inmate Crowe and Officer Woods with both of them landing on the floor. It is also undisputed that Officer Frederick Woods placed handcuffs on inmate Crowe and had Crowe seated in the cube when Officer McDonald came into the cube. It is undisputed that Correctional Officer Woods removed the cuffs from inmate Anthony Crowe. There were a total of fifteen inmates who stated that during the altercation between inmate Crowe and Officer Woods, they observed Officer Woods strike inmate Crowe with his fist from one to several times. There was one inmate that stated that this did not occur, and he stated that inmate Crowe raised his arm in a threatening gesture, and Officer Woods took inmate Crowe to the floor.

The disputed facts of this are that once handcuffs were taken off of inmate Crowe, Officer Frederick Woods stated he was in the process of taking inmate Crowe to the shift office when inmate Crowe walked to his bunk and would not go with Officer Woods to the shift office as he was instructed to do. Inmate Crowe stated he was told to go get a mop and mop up the water that had been turned over during the tussle in the cube, and when he went to get the mop, other inmates that witnessed this incident told Crowe that he needed to go to the shift office and have a body chart done. Officer Frederick Woods denied in his statement to Warden Watson that he instructed Crowe to go get a mop to mop up the cube. Correctional Officer Jerome McDonald stated that after the cuffs were removed from inmate Crowe, Officer Frederick Woods told inmate Crowe to go get a mop and broom to clean up the cube, and Officer Woods was planning on taking him to the shift office. At the time inmate Anthony Crowe was going to the shift office, Officers McDonald and Woods both exited the dorm to go to the shift office. It was estimated anywhere from 20 to 40 inmates exited the dorm following these two officers to the shift office with inmate Anthony Crowe. Third shift officers were coming on duty and responded to this situation. They were able to get the inmates back into the dorm.

The third incident involved inmate Ronald Moseley, W/M, AIS 132340. The first part of this incident occurred in B2-Dorm when inmate Ronald Moseley was loud and using vulgarities in speaking to correctional officers. Inmate Ronald Moseley was taken to the floor by Correctional Officer Wesley Mitchell. A few of the inmates that witnessed this stated that excessive force was used on inmate Moseley. When questioned about this, they stated that when Officer Mitchell took inmate Moseley down, Officer Mitchell did not have to take him down as hard as he did. It appears that when inmate Moseley was taken down by Correctional Officer Mitchell, inmate Moseley landed on top of Officer Mitchell on the floor of the dorm. The majority of inmates that saw this incident stated that no unnecessary force was used by Officer Mitchell, and in the situation, inmate Moseley definitely needed to be removed from the dorm, as the situation could have easily turned into a riot. Inmate Moseley was then taken to the holding area outside of the shift office. At this time, inmate Moseley started cursing and being vulgar in his language again. Inmate Moseley was taken down again and inmates were told to leave the area and go to another spot, which they did. None of the inmates present at the holding area outside of the shift office saw any excessive force used on inmate Ronald Moseley. Inmate Ronald Moseley stated that while on the floor, officers kicked and beat him. All the officers that were present with the exception of Sgt. Arthur Horton denied that anyone that anyone kicked or hit inmate Moseley. In Sergeant Arthur Horton's statement, he stated that Correctional Officer Patrick Lucas kicked or appeared to kick inmate Moseley in the side, and also he saw what appeared to be Correctional Officer Patrick Lucas hitting inmate Moseley with his fist beside his head.

Page 3 of 5

A copy of this case will be sent to the District Attorney's Office in Elmore County for their information and consideration.  Also a copy of this report will be sent to Warden Willie Thomas at Elmore Correctional Facility for possible administrative actions.

It appears that Correctional Officer Frederick Woods did not adhere to Department of Corrections' policies concerning the confiscating and handling of evidence when the pills were taken from inmate James Thomas.  Also, it would appear if as inmates claim that Officer Frederick Woods did pour water down inmate Thomas' back, that this would be a violation of Alabama Department of Corrections' policy.  It also appears that in the incident between inmate Anthony Crowe and Officer Frederick Woods that Officer Woods did not adhere to policies by the Alabama Department of Corrections by not immediately reporting this incident to the shift office after having inmate Anthony Crowe handcuffed. By removing the cuffs from Inmate Crowe in the cube and not keeping Inmate Crowe cuffed until he got to the shift office could be violations of institutional policy.

It appears that Correctional Officer Patrick Lucas possibly violated departmental rules and regulations if he did kick and hit inmate Ronald Moseley while Moseley was restrained.  It also appears that Sergeant Arthur Horton failed to report to Elmore Correctional Center supervisor staff what he observed between Officer Patrick Lucas and inmate Ronald Moseley.

## DETAILS:

On 5-5-2006, Correctional Officer Frederick Woods searched inmate James Thomas, W /M, AIS 237650, locker box and found one blue capsule and three round oval shaped pills. At this time, correctional officer Woods questioned inmate James Thomas as to where he got the pills from. COI Frederick Woods asked inmate Thomas where he got the pills from and Thomas stated that he got the pills from inmate Vickers. At this time, inmate Thomas was given instructions to find the inmate who he got the pills from and to bring him to the cube.

Later, Officer Woods had inmate Thomas come to the cube and began questioning him concerning where he got the pills from. Inmate Thomas then changed his statement as to where he obtained the pills. COI Woods told inmate Thomas, "You trying to play me and I'll do you a favor and not give you disciplinary this time." Officer Woods then took the blue capsule and three round oval shaped pills, placed them in toilet paper, and poured water on the pills in the toilet paper and threw them into the trash can. At this time, Officer Woods instructed inmate Thomas to leave the cube and go get a mop and clean up the water on the floor. According to COI Frederick Woods, inmate Thomas complied with this order.

A short time later, Officer Woods stated that he noticed inmate Anthony Crowe, W/M, AIS 244898, was pointing at Officer Woods and was talking to other inmates. Officer Woods stated he instructed Crowe to report to the cubicle and when inmate Crowe approached the inside of the cubicle, he asked inmate Crowe what was he doing pointing at him. Officer Woods states that he told inmate Crowe, "Is this Southern Brotherhood group mad because of the pills being found?" and Officer Woods stated that inmate Crowe became belligerent and stated, "Motherfucker, that inmate is crazy. Fuck with me.", and tried to push Officer Woods. Officer Woods stated he grabbed inmate Crowe and pulled him down to the floor. Officer Woods stated that his radio fell to the floor and the battery came loose from the radio. He stated he continued to hold inmate Crowe down until inmate Crowe stopped trying to fight. Officer Woods stated he instructed inmate Crowe to calm down and relax. Officer Woods stated he then asked inmate Crowe if he was calm and inmate Crowe responded that he was. Officer Woods stated he then let inmate Crowe up and placed handcuffs on inmate Crowe and had him sit in a chair. Officer Woods stated that after this, he then took the handcuffs off of inmate Crowe and was going to escort him to the shift office when inmate Crowe did not go as he was told, but went to his locker to get his shirt.

There are allegations involving three different inmates in this case.
1.    Involves James Thomas, W/M, AIS 237650. Inmate Thomas has made the allegation that while he was in the cubicle with Correctional Officer Frederick Woods, Officer Woods made him take his shirt off, made him roll up his pants legs, hold his arms out, and start turning around in circles. He stated that during this time Officer Woods poured water down his back. After Officer Woods did this, he, Officer Woods made him, inmate Thomas, go get a mop and come back and mop up the cubicle.
2.    Inmate Anthony Crowe, W/M, has made allegations that what Officer Woods had done to inmate James Thomas was not right .That another inmate was asking him, Crowe, about who the officer was that poured the water on inmate Thomas and that he, Crowe, was pointing out Officer Woods to this inmate. Inmate Crowe stated that apparently Officer Woods saw him pointing and Officer Woods told him, Crowe, to come to the cubicle. He has made allegations that Officer Woods grabbed him and threw him to the floor and then put cuffs on him while they were in the cubicle. After a short time, Officer Woods took the cuffs off of him and told Crowe to go get a mop and clean up the cubicle. He stated that he was going to get the mop when other inmates told him that what he needed to do was that he needed a body chart. He was told by other inmates that any time an officer has to use

restraints on you a body chart is supposed to be completed. That it was not right what Officer Woods had done, and what he, Crowe, needed to do was go to the shift office and see a supervisor. Inmate Crowe stated that he then went to his bed to put on a shirt and his shoes, and that Officer Woods, along with Correctional Officer McDonald came and Officer McDonald threatened to whip him more than he had already been whipped. He stated he was told by Officer McDonald that he needed to comply with what the officer told him. Inmate Crowe stated that he told Officer McDonald that he was going to the shift office. A number of inmates, including inmate Ronald Moseley, stated they were going to follow the officers to the shift office.

3.      The third complaint was made by inmate Ronald Moseley, W/M, AIS 132340. Inmate Moseley states that excessive force was used on him (Moseley) in the dorm when he was restrained by Officer Mitchell. Inmate Moseley states that he was verbally abusive towards correctional officers. He has stated that he was taken to the ground and cuffs were put on him. Inmate Moseley states that after he was cuffed and subdued, one of the officers kicked him.

This writer has contacted the majority of the occupants of B2 Dorm and has obtained short statements from each inmate that states that they did not see this incident. There are approximately thirty inmates who have stated that they did see this incident. No statements at this time have been taken, but this will be resumed on Monday, 5-15-2006. A list of the inmates and their statements, who claimed to have no knowledge of this incident, are attached to this report. Additional investigative work will be done on this case.

C. P. Barfoot, Investigator
Alabama Department of Corrections
Investigations and Intelligence Division

CPB/ch